OPINION
{¶ 1} The defendant-appellant, Cary Parsons, appeals the judgment of the Putnam County Court of Common Pleas denying his Motion to Dismiss the criminal charge brought against him.
 {¶ 2} On April 9, 2002, Parsons was charged with Furnishing Alcohol to a Minor in violation of R.C. 4301.69(A), a misdemeanor of the first degree. On that same day, a warrant was issued for his arrest.
 {¶ 3} On November 17, 2004, the April 2002 warrant was executed and Parsons was arrested. Subsequently, on February 18, 2005, Parsons filed a Motion to Dismiss the criminal charge against him claiming that the State failed to comply with the relevant statute of limitations pursuant to R.C. 2901.13. A hearing was held to determine the merits of Parsons' dismissal motion on March 10, 2005.
 {¶ 4} At the hearing, Marvin Schwiebert, a lead investigator for the Putnam County Sheriff's Office, testified that over the period of time between April 2002 and November 2004 that Parsons' warrant was outstanding, he called those involved with the case every four to six months. Moreover, Schwiebert noted that Parsons' warrant was entered into the NCIC system to inform all law enforcement agencies throughout the country that a warrant was issued for Parsons' arrest. The record states:
Q. Did you periodically, between the time the warrant was issued say inearly mid April 2002 until the time the warrant was served, whatefforts, if any, did you periodically make, if any at all, to attain alocation of his whereabouts?
 A. I just called the people that were involved in the case, the auntand the Jane Doe, periodically and asked if they ever heard from him.
 Q. With what degree of regularity did you initiate those contacts?
 A. I'd say one every four, five, six months.
 Q. And what instruction, if any, did you provide them if they wouldspeak to him?
 A. If they hear from him or where he is at, get back with us and let usknow.
 Q. Was any of the surrounding counties and the sheriff's departmentsnotified of the outstanding warrant?
 A. No. When the warrant is issued it goes into NCIC.
 Q. Okay.
 A. So any time he gets stopped, whether it be in the State of Ohio,California, wherever, the warrant will show up, and if he was stopped inthe State of Indiana, that warrant is not extraditable back into theState of Ohio, so they would not have executed the warrant.
Motion to Dismiss Hearing Tr. at pp. 7-8.
 {¶ 5} Parsons also testified about his whereabouts and activities for the period of time since April 2002 when the warrant was issued. He stated:
Q. Okay. You agree that you were in the area in March 2002?
 A. Yes.
* * *
Q. Okay. How long were you in the area?
 A. In the Putnam area about two weeks.
 Q. About two weeks. You heard that it is alleged that the datein question is March 27, 2002; correct?
 A. Correct.
 Q. Prior to that date, were you offered employment in Indiana?
 A. Yes.
 Q. And did you accept that employment?
 A. Yes, I did.
 Q. Do you remember if you accepted that employment prior to March 27,2002?
 A. Yes.
* * *
Q. When you moved to Indiana, were you attempting to conceal yourwhereabouts?
 A. No.
 Q. Okay. What was the first moment that you realized that there was acharge of — potentially a charge coming out of this Court?
* * *
A. 2004. I had received a certified letter from the Allen CountyChildren Services Court saying I had to appear in court because mychildren were signed off to my ex-wife's grandparents. * * *
Q. So you traveled to Allen County to pick up your children?
 A. Yes, sir.
 Q. Did you meet with your ex-wife, the mother of those children?
 A. Yes, I did.
 Q. Did a domestic dispute result from that meeting?
 A. Yes.
 Q. And did you call law enforcement in response to that domesticdispute?
 A. I absolutely did.
* * *
Q. Is that the moment the warrant for arrest was executed?
 A. It was about two hours later after they were told constantly to lookand look and look, and they said they never found nothing. Well, theymust have dug deep because pretty soon he says, you know, I'm sorry, wehave a warrant for your arrest.
* * *
Q. When you moved to Indiana for the job that you accepted, how farwere you living from the Ohio border?
 A. Approximately ten miles from the state line.
* * *
Q. You stated that you drive the Amish; is that correct?
 A. Correct, I do.
 Q. Does that involve driving the Amish to Ohio?
 A. Yes, I drive to it would be Toledo, Ohio on a daily basis. We leaveapproximately 5 in the morning and I return home approximately 6:00 p.m.at night.
 Q. So every day since, every day of work since March or April of 2002,it's your testimony that you have been driving the Amish to work?
 A. Correct.
* * *
Q. Okay. Did you have a valid Ohio license at that time?
 A. No, I was driving on a temporary license which my, I had topay a reinstatement fee to get my Ohio driver's license.
* * *
Q. Was the Ohio BMV and the Indiana BMV working together to transferyour license?
 A. To the best of my knowledge, yes.
 Q. When you moved from the area to accept your job in Indiana in Marchor early April of 2002, were you paying car insurance to an agent in thearea?
 A. Yes, I was paying car insurance to, I believe, it was SchultzInsurance Agency out of Delphos, Ohio, and I obtained, I believe it wasabout two months worth before I switched over to Indiana.
* * *
Q. Are you under an order to pay child support through the Allen CountyOhio Child Support Enforcement Agency?
 A. Yes, I am.
* * *
Q. Does the Allen County Ohio Child Support Enforcement Agencythen have your address in Indiana?
 A. Yes, they do.
 Q. Have you been receiving mail from the Allen County Ohio ChildSupport Enforcement Agency in Indiana?
 A. Yes, I do.
* * *
Q. You testified earlier that you had daily contacts with Ohio, stilldo for the last two years in fact through your employer. Do you haveother contacts that you have been making in Ohio since March or April of2002?
 A. Yes.
 Q. Do you have a sister in Payne, Ohio?
 A. Yes, I do.
 Q. Do you visit her?
 A. Yes.
 Q. How often?
 A. Three times a month.
 Q. You have a father in Van Wert County?
 A. Yes, I do.
 Q. Do you visit him?
 A. Yes.
 Q. How often?
 A. Once a week.
Id. at pp. 10-19.
 {¶ 6} Moreover, Parsons testified that he regularly has dinner with the juvenile chief probation officer for Allen County. Parsons noted that those dinners take place in Van Wert, Ohio. Finally, on cross-examination, Parsons stated that he was stopped two times by the Ohio State Patrol. The record states:
Q. Mr. Parsons, during your travels between Ohio and the State ofIndiana; how many times were you stopped for any traffic infraction?
 A. I was stopped twice, once for speeding from the Ohio State Patrol,and once for no license plate light.
 Q. Did you appear in court for those or just post bond?
 A. No, I believe I was given a warning. He took my driver's license,went back and ran it through and said he sees that I got a clean licenseand just slow it down, and get my license plate light fixed.
 Q. Okay. On your identification that you referred to, what sort ofinformation is listed on that identification; does that include yoursocial security number and date of birth?
 A. Yes, it does.
Id. at 23-24.
 {¶ 7} The trial court denied Parsons' Motion to Dismiss. In its conclusions of law and findings of fact, the trial court stated:
1. A Misdemeanor Complaint for providing an under aged person with analcoholic beverage, Revised Code § 4301.69(A), was filed and a Warrantissued on April 9, 2002.
 2. Prior to the Warrant being issued, the Defendant had moved from theState of Ohio and had taken up permanent residence and employment in theState of Indiana.
 3. The Putnam County Sheriff's Office issued a State-wide "pick-up" onits Warrant through the Ohio Bureau of Criminal Investigation Identification and through the National Crime Information Center.
 4. The Putnam County Sheriff's Office made periodic contacts with thealleged recipient of the alcohol and her family every four to six monthswhile the Warrant was in effect to determine if they knew the whereaboutsof the Defendant.
 5. The Defendant was often in Ohio on business during the period oftime that he was living in Indiana.
 6. Indiana and Ohio do not extradite on misdemeanor Warrants.
 7. The Defendant came to Ohio in November 2004. The Putnam CountySheriff's Office received a "tip" that he was in the State and theDefendant was arrested on the outstanding Warrant.
 8. The Putnam County Sheriff's Office used reasonable diligence toserve the Warrant and, as Defendant took up permanent residence outsidethe State of Ohio, the statute of limitations was tolled until hisarrest.
Judgment Entry Denying Parsons' Motion to Dismiss pp 1-2.
 {¶ 8} On April 7, 2005, Parsons withdrew his plea of not guilty and entered a plea of no contest to the charge of furnishing alcohol to a minor, in violation of R.C. 4301.69(A). On April 18, 2005, Parsons filed this appeal alleging two assignments of error. For the sake of judicial economy, the assignments of error will be consolidated.
Assignments of Error
 THE TRIAL COURT ERRED IN FINDING THAT REASONABLE DILIGENCE WASUSED TO SERVE THE ARREST WARRANT.
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE STATUTE OFLIMITATIONS WAS TOLLED.
R.C. 2901.13(A)(1)(b) states:
Except as provided in division (A)(2) or (3) of this section or asotherwise provided in this section, a prosecution shall be barred unlessit is commenced within the following periods after an offense iscommitted . . . [f]or a misdemeanor other than a minor misdemeanor, twoyears. * * * 
 {¶ 9} Moreover, R.C. 2901.13(E) defines "commenced" as follows:
A prosecution is commenced on the date an indictment is returned or aninformation filed, or on the date a lawful arrest without a warrant ismade, or on the date a warrant, summons, citation, or other process isissued, whichever occurs first. A prosecution is not commenced by thereturn of an indictment or the filing of an information unless reasonablediligence is exercised to issue and execute process on the same. * * *
Finally, R.C. 2901.13(G) states:
The period of limitation shall not run during any time when the accusedpurposely avoids prosecution. Proof that the accused departed this stateor concealed the accused's identity or whereabouts is prima-facieevidence of the accused's purpose to avoid prosecution.
 {¶ 10} As the Ohio Supreme Court noted, the primary purpose of a criminal statute of limitations such as R.C. 2901.13 "is to limit exposure to prosecution to a certain fixed period of time following the occurrence of those acts[.] * * * [T]he intent of R.C. 2901.13 is to discourage inefficient or dilatory law enforcement rather than to give offenders the change to avoid criminal responsibility for their conduct. * * * The rationale for limiting criminal prosecutions is that they should be based on reasonably fresh, and therefore more trustworthy evidence[.]" State v. Climaco, Climaco, Seminatore, Lefkowitz GarofoliCo., L.P.A., 85 Ohio St.3d 582, 586, 1999-Ohio-408.
 {¶ 11} The State has the burden of proving that the prosecution was commenced within the two year statute of limitations. State v. King
(1995), 103 Ohio App.3d 210, 212, 658 N.E.2d 1138. A prosecution is commenced upon issuance of a warrant if reasonable diligence is used to execute such warrant. R.C. 2901.13(E). The period of limitations is tolled when the accused purposely avoids prosecution. R.C. 2901.13(G). Proof that the accused departed from the State is prima facie evidence of the accused's purpose to avoid prosecution. Id. The State bears the burden of proving that reasonable diligence was exercised in issuing the warrant. King, 103 Ohio App.3d at 212.
 {¶ 12} In this case, the trial court concluded that the evidence was sufficient to establish both factors; i.e. that the state used reasonable diligence in the execution of the warrant — and that Parson's residence outside the State of Ohio tolled the statute of limitations. We respectfully disagree.
 {¶ 13} According to R.C. 2901.13(G), Parsons must have "purposely" avoided prosecution in order for the tolling provision to apply. Pursuant to the statute, Parsons departure from Ohio is prima facie evidence of his purposeful avoidance of prosecution. Nevertheless, after reviewing the facts of the instant case, supra, it is our conclusion that the evidence is not sufficient to sustain the presumption that the statute of limitations must toll. To support this, we first highlight the fact that the record indicates, and the trial judge found, that Parsons moved to Indiana prior to a warrant being issued for his arrest. Second, we highlight the fact that Parsons drove from Indiana to Toledo, Ohio in the course of his employment everyday for work over the two years the statute of limitations was running. For example, it was established that Parsons was in Ohio as required by his employment and for personal purposes. His employment of transporting Amish construction workers to and from Toledo, Ohio every work day since April 2002 provided that he would spend approximately twelve hours in Ohio each work day. Also, he frequently visited family and friends in various parts of Ohio.
 {¶ 14} In addition, the record indicates that the BMV of both Ohio and Indiana also had Parsons valid address. Moreover, on cross examination, the State revealed evidence that Parsons was stopped twice by the Ohio State Patrol on two separate occasions. For some unknown reason, however, the record indicates that Parsons was never apprehended. Moreover, neither patrol officer advised Parsons that there was a warrant out for his arrest.
 {¶ 15} In sum, based on the facts of this case, we cannot conclude that the record contains sufficient evidence to establish that Parsons "purposely" avoided prosecution in order to trigger the tolling provisions in R.C. 2901.13(G). Nor can we conclude that the State met its burden in this case. Specifically, we cannot say that entering the warrant into NCIC and calling a relative once every four to six months over a two year period under the unique circumstances of this case, are alone sufficient to establish that the State exercised due diligence in executing the warrant.
 {¶ 16} Accordingly, we conclude that the trial court did err in denying Parsons' Motion to Dismiss. We also conclude that the trial court erred in concluding that the statute of limitations was tolled. Thus, the first and second assignments of error are sustained, and the judgment is reversed and remanded.
Judgment Reversed and Remanded and the Defendant is Discharged.
 Cupp, P.J., and Bryant, J., concur.