The STATE of Ohio, Appellee,

v.

GALLANT, N.K.A. Below, Appellant.

[Cite as *State v. Gallant,* 174 Ohio App.3d 264, 2007-Ohio-6714.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9-07-18.

Decided Dec. 17, 2007.

Brent W. Yager, Assistant City Law Director, for appellee.

J.C. Ratcliff and Jon L. Jensen, for appellant.

PRESTON, Judge.

{¶ 1} Defendant-appellant, Claudia M. Gallant, appeals the judgment of the Marion County Municipal Court denying her motion to dismiss criminal check-fraud charges. For the reasons that follow, we reverse.

{¶ 2} On July 26 & 28, 1989, Claudia wrote two checks payable to the order of Smith's Market, one of which was returned for insufficient funds, the other with a notation that the account was closed. Subsequently, Smith's Market sent Claudia a notice of dishonor by certified mail, which she received on August 11, 1989.

{¶ 3} On September 14, 1989, a complaint charging Claudia with two counts of check fraud in violation of R.C. 2913.11, first-degree misdemeanors, was filed with the Marion County Municipal Court. On September 28, 1989, a summons was issued by certified mail advising Claudia of the charges against her and directing her to appear in court on October 16, 1989. On October 16, 1989, the summons was returned "unclaimed." On October 17, 1989, a second summons was issued by regular United States mail, designating a court date of October 30, 1989. Claudia subsequently failed to appear for the scheduled October 30th arraignment.

{¶ 4} In November 1989, Claudia remarried and took her husband's last name of "Below." On January 11, 1990, a warrant was issued for Claudia's arrest for failing to appear before court on October 30, 1989. In February 1990, Claudia moved to California with her husband, who served in the United States Navy.

{¶ 5} On May 13, 1992, Claudia contacted the Marion law director's office inquiring about the pending charges. Claudia spoke with Peg Whalen, one of the office clerks. During the conversation, Claudia advised Whalen that she was now living in Virginia, that she was married and her last name had changed to "Below," and that she would contact the court when she returned to Ohio. Placed in the court's file was a note from Whalen stating: "Claudia Gallant Below called from Va. where she lives. Wants to take care of this–will call when she comes to town—Peg." Also attached to the copy of the complaint in the court's file was an undated note with Claudia's Virginia address and telephone number.

{¶ 6} In November 2001, Claudia returned to Marion with her husband, who had since retired from the Navy. After returning to Marion, Claudia gained employment at a local convenience store, enrolled her children in a local school, and became involved with her children's extracurricular activities.

{¶ 7} On October 16, 2006, Claudia was arrested on the outstanding January 11, 1990 failure-to-appear bench warrant. On October 17, 2006, Claudia filed a jury demand. On November 29, 2006, Claudia filed a motion to dismiss for failure to prosecute within the two-year statute of limitations provided in R.C. 2901.13(A).

{¶ 8} On December 28, 2006, the trial court held a hearing on the motion and, on January 11 and 18, 2007, the parties filed posthearing memoranda. On February 1, 2007, the trial court issued its judgment denying Claudia's motion to dismiss.

{¶ 9} On April 18, 2007, Claudia entered a plea of "No contest with a stipulated finding of Guilty," was sentenced to 30 days in jail, and was ordered to pay a $400 fine. The trial court suspended the 30–day jail term and $250 of the fine on conditions that she abide by the laws of Ohio and pay restitution for the returned checks.

{¶ 10} Claudia now appeals, asserting two assignments of error for review.

Assignment of Error No. I

The trial court's finding that the Appellant purposely avoided prosecution was not supported by sufficient, credible evidence and was against the manifest weight of the evidence.

{¶ 11} In her first assignment of error, Claudia argues that the trial court's finding that she purposely avoided prosecution was against the manifest weight of the evidence. Claudia argues that she did not receive the summons or have any knowledge of the pending charges before she moved to California in February 1990. She also argues that once she did find out about the charges in May 1992 she contacted the Marion law department and gave them her contact

information. Furthermore, she maintains that she has been in Marion since 2001, that she has been locally employed, that her children were enrolled in local schools, that her children participated in various school activities, and that she was not hiding from police. Last, she argues that she changed her last name as a result of a subsequent recorded marriage, not to evade prosecution.

{¶ 12} The state argues that proof that the accused has left the state or concealed their identity is prima facie evidence of the accused's purpose to avoid prosecution under R.C. 2901.13(G). The state maintains that the evidence in the record was sufficient for the trial court to find that Claudia was purposely evading prosecution, since she admitted changing her last name shortly before charges were filed, and since she moved shortly after an arrest warrant was issued. The state further argues that Claudia did not present sufficient evidence to overcome the presumption that she purposely evaded prosecution. We disagree.

{¶ 13} R.C. 2901.13(G) provides:

The period of limitation shall not run during any time when the accused purposely avoids prosecution. Proof that the accused departed this state or concealed the accused's identity or whereabouts is prima-facie evidence of the accused's purpose to avoid prosecution.

The state bears the burden of proving that the prosecution was commenced within the two-year statute of limitations. *State v. Parsons,* 3d Dist. No. 12–05–06, 2005-Ohio-5755, 2005 WL 2840529, ¶ 11, citing *State v. King* (1995), 103 Ohio App.3d 210, 212, 658 N.E.2d 1138. This burden includes showing that R.C. 2901.13(G) is applicable and that its requirements are met under the facts of the case. See, e.g., *State v. Pitts* (Sept. 30, 1998), 6th Dist. No. L–98–1044, 1998 WL 667263.

{¶ 14} The evidence presented at the trial court hearing on Claudia's motion to dismiss revealed that Claudia had, in fact, changed her name and left Ohio. According to R.C. 2901.13(G), these facts constituted prima facie evidence of Claudia's purpose to avoid prosecution as the state argues and the trial court found. However, Claudia testified concerning these circumstances, thus rebutting the prima facie evidence of purposeful evasion. Regarding her name change, Claudia testified that it was as a result of a second marriage:

Q: Claudia, you had testified that your name changed. When did your name change again?

A: November 18th, 1989.

Q: Okay. It's fair to say that your name would have changed while you were in Marion?

A: Correct.

Q: Did you get married in Marion?

A: Correct.

Q: Did you get a marriage license here in Marion?

A: Correct.

Q: And so obviously those records would be available that you were married and what your name was here in Marion?

A: Yes, we got 'em at the courthouse.

As to leaving Ohio, Claudia testified that her new husband was in the Navy and was required to move to California for duty. In fact, Claudia testified that they have moved to several states due to her husband's military service, including South Carolina, Florida, Texas, Virginia, and California. Claudia also explained that her husband and she returned to Marion in November 2001 after her husband retired from the Navy.

{¶ 15} In addition, Claudia testified that she never received the summons at her address in Marion in 1989 and that she never received the summons since she had moved back to Marion until October 2006, five years later. Furthermore, in May 1992, when Claudia became aware of the pending charges, she contacted the Marion law director's office providing the office with her new married name of "Below," her new address in Virginia, and her new telephone number.

{¶ 16} Finally, Claudia testified that she returned to Marion in November 2001 when her husband retired from the Navy. Claudia worked five days per week at a local convenience store located on Main Street in Marion, where she regularly served law-enforcement officers. Claudia's children were enrolled in Marion area schools and active in the Fellowship of Christian Athletes, volleyball, cheerleading, softball, cross-country, and track.

{¶ 17} Although the trial court was correct to conclude that Claudia's name change and departure from Ohio were prima facie evidence of her intent to purposely avoid prosecution under R.C. 2901.13(G), it is our conclusion that the evidence presented viewed in its entirety was contrary to the presumption that Claudia was, in fact, purposely avoiding prosecution.

{¶ 18} First, the record indicates that Claudia never received the summons, and therefore, notice of the pending check fraud charges. The state concedes as much in its brief, admitting that the summons by certified mail was returned "unclaimed." The fact that she never received the summons can be considered as evidence that she did not *purposely* avoid prosecution, since she did not have notice of the pending charges.

{¶ 19} Second, Claudia's name change and move to California merely reflect changes in her life circumstances, not purposeful evasion of prosecution. Claudia explained that her name changed in November 1989 when she remarried and

took her husband's surname. Claudia also testified that a marriage license was filed in Marion County reflecting the name change. Claudia further explained that her husband and she moved to California because he was in the Navy and was required to move for duty. This testimony is consistent with common sense and real-world experience and therefore credible. Women often take their husbands' surnames upon marriage, and military service often requires families to move around the country every few years, like Claudia and her husband.

{¶ 20} Third, Claudia's actions following her notice of the pending charges indicate that she was not purposely avoiding prosecution. When Claudia found out about the pending charges in May 1992, she called the Marion law director's office to find out how she could resolve the issue. Furthermore, the record indicates that Claudia provided the law director with her new last name of "Below" and her address and telephone number in Virginia. It would be certainly an odd thing for someone who was purposely avoiding prosecution to call the law director's office to inquire about the charges and to provide his or her new contact information.

{¶ 21} Claudia's return to Marion after receiving notice of pending charges also indicates that she was not purposely avoiding prosecution. After she found out about the pending charges in 1992 and her husband retired, Claudia returned to Marion in 2001. In addition to returning to the very city in Ohio where the charges were pending, Claudia went about her life as a normal citizen, holding a job, enrolling her children in local schools, and participating with them in sporting activities. Beyond this fact, Claudia entered into employment at a local convenience store that was located on Main Street in Marion and frequented by law-enforcement officers. Again, it would be an odd way for one to avoid prosecution and conceal his or her whereabouts by returning to the same city where charges were pending and taking up employment at a local convenience store that law-enforcement officers frequently patronize.

{¶ 22} Reviewing all of this evidence, we conclude that the state failed to show that Claudia *purposely* evaded prosecution. Therefore, the trial court's determination that R.C. 2901.13(G)'s tolling provision applied was in error.

{¶ 23} Claudia's first assignment of error is therefore sustained.

Assignment of Error No. II

The trial court abused its discretion and erred in denying Appellant's Motion to Dismiss.

{¶ 24} In her second assignment of error, Claudia argues that the trial court abused its discretion when it denied her motion to dismiss for failure to prosecute within the applicable statute of limitations. Claudia argues that one

attempt to serve the summons was not reasonable diligence. The state, on the other hand, argues that it made an attempt to serve by certified mail and by regular mail and could not serve Claudia because she had left Ohio. We agree that the state failed to exercise reasonable diligence in executing both the summons and the warrant.

{¶ 25} R.C. 2901.13(A)(1)(b) states:

Except as provided in division (A)(2) or (3) of this section or as otherwise provided in this section, a prosecution shall be barred unless it is commenced within the following periods after an offense is committed * * * [f]or a misdemeanor other than a minor misdemeanor, two years.

R.C. 2901.13(E) defines "commenced" as follows:

A prosecution is commenced on the date an indictment is returned or an information filed, or on the date a lawful arrest without a warrant is made, or on the date a warrant, summons, citation, or other process is issued, whichever occurs first. A prosecution is not commenced by the return of an indictment or the filing of an information unless reasonable diligence is exercised to issue and execute process on the same.

As this court and the Ohio Supreme Court have noted before, the primary purpose of a criminal statute of limitations like R.C. 2901.13 is

to limit exposure to prosecution to a certain fixed period of time following the occurrence of those acts * * *. [T]he intent of R.C. 2901.13 is to discourage inefficient or dilatory law enforcement rather than to give offenders the chan[ce] to avoid criminal responsibility for their conduct. * * * The rationale for limiting criminal prosecutions is that they should be based on reasonably fresh, and therefore more trustworthy evidence * * *.

*Parsons,* 2005-Ohio-5755, 2005 WL 2840529, at ¶ 10, citing *State v. Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.* (1999), 85 Ohio St.3d 582, 586, 709 N.E.2d 1192.

{¶ 26} The state bears the burden of proving that the prosecution was commenced within the two-year statute of limitations. Id. at ¶ 11, citing *King,* 103 Ohio App.3d at 210, 658 N.E.2d 1138. A prosecution is commenced upon issuance of a summons or warrant if reasonable diligence is used to execute it. R.C. 2901.13(E). "[W]hat constitutes reasonable diligence will depend on the facts and circumstances of each particular case." *Sizemore v. Smith* (1983), 6 Ohio St.3d 330, 332, 6 OBR 387, 453 N.E.2d 632. The state also bears the burden of proving that reasonable diligence was exercised in executing the summons or warrant. *Parsons,* 2005-Ohio-5755, 2005 WL 2840529, at ¶ 11, citing *King,* 103 Ohio App.3d at 212, 658 N.E.2d 1138.

{¶ 27} The state argues that it exercised reasonable diligence in executing the summons and complaint, since it attempted to serve Claudia by both certified and regular mail. We disagree.

{¶ 28} To constitute reasonable diligence under R.C. 2901.13(E), service of the summons and complaint must *first* be in accordance with Crim.R. 4(D), which provides that the summons should be served by either (1) delivering a copy to the defendant personally, (2) leaving it at the defendant's usual place of residence with a person of suitable age, or (3) mailing it to the last known address by certified mail with return receipt requested. Crim.R. 4(D)(3); *State v. Morris* (1984), 20 Ohio App.3d 321, 323, 20 OBR 424, 486 N.E.2d 168. Crim.R. 4(D) does not provide for service by regular mail. Therefore, the state's second attempt to serve the summons and complaint by regular mail cannot constitute reasonable diligence under R.C. 2901.13(E). Id.; *State v. Stevens* (Dec. 22, 1994), 8th Dist. No. 67400, at 2, 1994 WL 716350.

{¶ 29} The state's first attempt at service of the summons and complaint was by certified mail. This method of service does comply with Crim.R. 4(D). The real issue is whether, in these circumstances, the state's single attempt at service by certified mail constituted reasonable diligence under R.C. 2901.13(E). We find that it does not.

{¶ 30} Although whether the state exercised reasonable diligence to prosecute depends upon the facts and circumstances of each case, generally a single attempt to serve a defendant in compliance with Crim.R. 4(D) is insufficient to constitute reasonable diligence. *Sizemore,* 6 Ohio St.3d at 332, 6 OBR 387, 453 N.E.2d 632; *King,* 103 Ohio App.3d at 212–213, 658 N.E.2d 1138; *State v. Jackson,* 8th Dist. No. 86755, 2006-Ohio-2468, 2006 WL 1360508, ¶ 10; *State v. McNichols* (Sept. 5, 2000), 5th Dist. No. 2000CA00058, at 2, 2000 WL 1275491. This is especially true in this case, where the only attempt at service in compliance with Crim.R. 4(D) over the course of 17 years was the mailing of the summons by certified mail.

{¶ 31} The state makes much of the fact that Claudia left Ohio for a substantial number of years 12 and argues that under these circumstances, service of the warrant in 2006 constituted reasonable diligence. The trial court agreed with this argument; however, it also concluded that evidence supported finding that Claudia was purposely evading prosecution, which served to toll the statute of limitations. R.C. 2901.13(G). Since we have found that the trial court's finding of purposeful evasion of prosecution was not supported by the evidence, we are not persuaded or bound by its finding that the warrant was executed with reasonable diligence.

{¶ 32} The state neglects to mention the following facts: (1) Claudia filed a marriage certificate in Marion County reflecting her name change in November 1989, (2) Claudia called the Marion City law director's office in May 1992 and provided her new married name and her address and telephone number in Virginia, and (3) Claudia and her husband returned to Marion in November 2001, where Claudia maintained employment on Main Street in Marion serving law-enforcement officers, enrolled her children in local schools, and participated with them in sporting activities in the community. Yet the state failed to execute the warrant until October 2006—17 years after the alleged fraudulent checks, 17 years after the recorded marriage certificate, 14 years after Claudia called and provided her new contact information, and five years after Claudia returned to Marion, the very town where the charges were pending. Reviewing all of these facts and circumstances, we cannot conclude that the state has proven that it exercised reasonable diligence in executing either the summons in 1989 or the warrant in 2006. *Parsons,* 2005-Ohio-5755, 2005 WL 2840529, at ¶ 11, citing *King,* 103 Ohio App.3d at 212, 658 N.E.2d 1138.

{¶ 33} Claudia's second assignment of error is therefore sustained.

Judgment reversed
and defendant discharged.

ROGERS, P.J., and SHAW, J., concur.