[Cite as *State v. Berry*, 2021-Ohio-2588.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

      Plaintiff-Appellant,            :

                                    No. 109873

      v.                              :

ALBERT BERRY,                           :

      Defendant-Appellee.             :

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 29, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-14-592209-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, *for appellant.*

Cullen Sweeney, Cuyahoga County Public Defender, and Erika B. Cunliffe, Assistant Public Defender, *for appellee.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals from the decision of the Cuyahoga County Court of Common Pleas granting the motion to dismiss filed by

defendant-appellee Albert Berry based on the state's failure to commence prosecution within the applicable statute of limitations. The state contends that the trial court erred in dismissing the indictment on statute of limitations grounds because it failed to consider (1) "law enforcement efforts to locate defendant after the indictment" was filed and (2) "defendant's conduct in avoiding apprehension" in determining whether the prosecution was timely commenced under R.C. 2901.13.

{¶ 2} For the reasons that follow, we affirm.

**Procedural History and Factual Background**

{¶ 3} On December 30, 2014, a Cuyahoga Grand Jury charged Berry in a five-count indictment: two counts of rape (Counts 1 and 2), two counts of attempted rape (Counts 3 and 4) and one count of kidnapping with a sexual motivation specification (Count 5). The charges arose from the alleged sexual assault of S.S. on January 8, 1995.

{¶ 4} On September 11, 2017, at the conclusion of a bench trial, Berry was found guilty of one count of rape in violation of R.C. 2907.02(A)(1)(c) (Count 1) and one count of kidnapping in violation of R.C. 2905.01(A)(4) with a sexual motivation specification (Count 5). The trial court granted Berry's Crim.R. 29 motion as to Counts 2 and 3 and found Berry not guilty of attempted rape as charged in Count 4. The rape and kidnapping counts merged for sentencing, and the state elected to have Berry sentenced on the rape count. Berry was sentenced to three years in prison and classified as a sexually oriented offender. The trial court also imposed five years of mandatory postrelease control.

{¶ 5} Berry appealed, arguing that he was denied effective assistance of counsel due to his trial counsel's failure to file a motion to dismiss based on the statute of limitations or preindictment delay. On appeal, this court found that Berry's trial counsel's performance was deficient and that there was a reasonable probability Berry's case would have been dismissed if his trial counsel had filed a motion to dismiss the indictment. This court vacated Berry's convictions and remanded the case with instructions for the trial court to appoint Berry new counsel and to allow Berry to file a motion to dismiss the indictment. *State v. Berry*, 8th Dist. Cuyahoga No. 106415, 2018-Ohio-4855, ¶ 21.

{¶ 6} The state filed an application for reconsideration and en banc consideration pursuant to App.R. 26, arguing that the panel's decision conflicted with other decisions from the district that "have deemed compliance with Crim.R. 4 as satisfying reasonable diligence." This court denied the state's application.

{¶ 7} The state appealed to the Ohio Supreme Court. On August 21, 2019, the Ohio Supreme Court accepted the state's jurisdictional appeal. *State v. Berry*, 2019-Ohio-3263, 129 N.E.3d 470. The proposition of law accepted for review was whether "[w]here service of a summons is in compliance with Crim.R. 4(D), a threshold showing has been made that reasonable diligence has been made to serve the summons."

{¶ 8} On February 3, 2020, the state filed a motion to dismiss the appeal, acknowledging that "Crim.R. 4(D)'s provisions on allowing service by commercial carrier did not go into effect until July 1, 2018" and that "[t]he fact that the summons

in question was served, in this case, prior to July 1, 2018 undermines the state's arguments with respect to the proposition of law accepted for review." On February 5, 2020, the Ohio Supreme Court granted the state's motion and dismissed the appeal. *State v. Berry*, 2020-Ohio-366, 138 N.E.3d 1177.

### Berry's Motion to Dismiss the Indictment

{¶ 9} Berry was assigned new counsel, and on February 19, 2020, he filed a motion to dismiss the indictment on the grounds that (1) continued prosecution of the case violated the applicable statute of limitations and (2) Berry had been subject to unjustifiable preindictment delay. The state opposed the motion.

{¶ 10} On July 8, 2020, the trial court held an evidentiary hearing on the motion. At the hearing, the state presented testimony from two witnesses: Kenneth Riolo, an investigator with the Cuyahoga County Prosecutor's Office's Sexual Assault Kit Task Force, and Detective Nicholas Riegelmayer, formerly assigned to the Fugitive Task Force for the Warrant Apprehension Unit of the Cuyahoga County Sheriff's Department (the "fugitive unit"). The parties also introduced transcripts of the testimony of several witnesses from the trial. A summary of the relevant evidence presented at the hearing follows.

### Investigation of the Incident and Prior Arrest

{¶ 11} Three days after the incident, on January 11, 1995, S.S. reported the incident and went to the hospital, where evidence was collected for a rape kit. Police interviewed S.S. regarding the incident the following day. S.S. identified a man — then known to her as "Doonti" — as the perpetrator. Approximately one month

later, "Doonti" ran into S.S.'s apartment in an attempt to hide from police, who were pursuing him in an unrelated matter. When the police arrived at her apartment, S.S. informed them that this was the man who had sexually assaulted her a month earlier. "Doonti" was then identified as Berry, and police arrested him. A police report was filed in 1995 naming Berry as a suspect in the sexual assault of S.S.

{¶ 12} At that time, S.S. was "tangled up" in a drug case involving a former boyfriend, and she informed police that she did not want to pursue charges against Berry. Berry was released from jail, and no further action was taken in the case until 2012.

{¶ 13} In October 2012, S.S.'s rape kit was submitted for testing. Based on a CODIS "hit," the DNA profile obtained from testing the rape kit was initially thought to be a match with a man from Cincinnati. However, it was later determined that that individual had never been in Cleveland and that his DNA was not, in fact, a match to the DNA from the rape kit.

{¶ 14} After S.S. spoke with police in 1995, she did not hear anything further about the case until 2014. In April 2014, an agent from the Bureau of Criminal Investigation ("BCI") contacted S.S. and showed her a photo array that included a photograph of the Cincinnati man identified from the CODIS hit. Berry was not included in that photo array. S.S. did not identify anyone in that photo array as her assailant.

{¶ 15} On September 14, 2014, Investigator Riolo was assigned to the case. He testified that he reviewed the case file, including the 1995 police report in which

Berry had been identified as the suspect. He then began looking for Berry and S.S. to get their "side[s] of the story" and "see where [he] went from there." Investigator Riolo indicated that on November 20, 2014, he went to an address he believed to be Berry's residence, 16210 Arcade Avenue and left his card. He stated that Berry's mother called him back and said that she had not seen Berry, that he did not live there, that he lived with "girlfriends around town" and that she did not know where he was but that she would let Berry know Investigator Riolo was looking for him.

{¶ 16} On November 25, 2014, Riolo located and reinterviewed S.S. and prepared a photo array for S.S. that included Berry. S.S. identified Berry as her assailant in the photo array. Investigator Riolo then continued his efforts to locate Berry. He stated that he learned that Berry had an outstanding warrant for failure to pay child support and that he had children with two different women — Quiniece Banks and Kimberly Woods. Investigator Riolo obtained their addresses[1] and spoke with the women on December 17, 2014. Both of the women lived in Euclid, Ohio.

{¶ 17} Investigator Riolo testified that he informed both Banks and Woods that he needed to speak with Berry and that "[a]t that point[,] he wasn't in any trouble," he just wanted to interview him. Investigator Riolo stated that Banks told him that she did not know where Berry was and that she could not give him an

---

[1] Investigator Riolo testified that on December 16, 2014, he had one of the BCI analysts who worked with his task force "run Mr. Berry for any addresses" and that she "did a workup." There is no evidence in the record as to what this workup entailed or what information was gleaned from it, other than that Berry had "missed a court date or something," that Berry had an outstanding warrant for failure to make child support payments and the names and addresses of the mothers of Berry's children.

address or telephone number for Berry but that "he comes by, and he sees the kids." Investigator Riolo testified that Woods told him that she had filed "nonsupport papers" against Berry and that Berry was living with Banks. Woods gave Investigator Riolo two telephone numbers for Berry. Investigator Riolo stated that he called both numbers but "didn't get an answer on either one." Investigator Riolo stated that he left his card with both women and that they both said they would let Berry know Investigator Riolo was looking for him.

{¶ 18} Investigator Riolo stated that because he was never able to locate Berry, the state "went forward and indicted" Berry. Berry was indicted less than two weeks later. Investigator Riolo stated that he sought a warrant "as part of the indictment" because "that was the only way * * * I would be able to recover some DNA from Mr. Berry" because "[h]e didn't have DNA in the system at that time * * * plus I had enough probable cause to have him arrested based on the identification of [S.S.]."

{¶ 19} Banks, who had two children with Berry, testified that Berry had lived with her "on and off" from 1998 until 2014 or 2015. She stated that, at one point, police came to her house looking for Berry and informed her that he was being investigated for a rape. She testified that she could not remember whether Berry was living with her at that time because they were "broken up for a while" and he left, then he came back and eventually their relationship ended. She testified that

she told Berry that the police were looking for him.[2]  According to Banks, when Berry left Banks, he lived at "his girlfriend's house."  Although they were no longer together, Berry visited his children "sometimes."  Banks testified that, to her knowledge, Berry was "always in town."  Investigator Riolo testified that he had no information that Berry had ever left Cuyahoga County.

### The Indictment, Summons and Warrant and Efforts to Execute Same

{¶ 20} A warrant was issued on the indictment on December 30, 2014.  The warrant listed an address of 16210 Arcade Avenue, Cleveland, Ohio 44110, for Berry. The trial court docket indicates that on same day, a summons was sent to Berry via Federal Express at a different address, 3002 E. 71st Street, Cleveland, Ohio 44104, and that the capias was "printed and sent to sheriff" on December 31, 2014.

{¶ 21} On January 14, 2015 — the date initially scheduled for Berry's arraignment — a notation was made on the docket, stating "original capias remains from 12/30/2014."  A notation was made on the docket the following day, indicating that the summons that had been sent out for service on December 30, 2014, had been returned on January 6, 2015 and that there had a "failure of service" on Berry due to a "bad address."[3]  The docket does not reflect any subsequent attempts to serve the summons on Berry.

---

[2] It is unclear from the record when Banks told Berry police were looking for him.

[3] Although the docket includes entries relating to the service and failure of service of the summons, documentation showing that the summons was sent and the Federal Express receipt showing a failure of service are missing from the file in this case.

{¶ 22} Investigator Riolo testified that on January 14, 2015, Berry called and left a voicemail message for him. According to Investigator Riolo, Berry stated that he had seen a "wanted poster" identifying him and was calling to talk to Investigator Riolo. Investigator Riolo stated that Berry did not leave a number and that his caller ID indicated that the call came from an anonymous number. Investigator Riolo did not record, transcribe or otherwise preserve the voicemail message "other than to put it in [his] notes." Investigator Riolo stated that he did not know to what Berry was referring because he "had nothing to do" with looking for Berry after the arrest warrant was issued in December 2014.

{¶ 23} Following his indictment, police attempted to locate Berry on two occasions. Cuyahoga County Sheriff "duty reports" indicate that on February 10, 2015, at 10:59 a.m., police went to 16210 Arcade Avenue and spoke with Berry's mom. "[N]o additional info" was obtained. More than a year later, on March 22, 2016, police made a second attempt to locate Berry. At 5:42 a.m., they went 1720 Allandale Avenue in East Cleveland. There is nothing in the record regarding the source of this address or why it was believed to have been associated with Berry. It was a "bad address"; the resident said that she did not know Berry. At 5:55 a.m., police returned to 16210 Arcade Avenue. Detective Riegelmayer testified that 16210 Arcade Avenue was "still the family's address."[4] He stated that an officer spoke with Berry's father, who said he had not seen Berry in months, and also spoke with a

---

[4] Detective Riegelmayer testified that he had no role in any effort to apprehend Berry prior to January 8, 2015.

"family friend," who stated he had seen Berry at the home the previous Sunday. Detective Riegelmayer had no information regarding any other efforts to locate Berry.

{¶ 24} On or about December 7, 2016, Berry was arrested following a December 5, 2016 traffic stop for failure to stop at a stop sign. At the traffic stop, Berry initially gave police a false name, Gregory Steel, and a false date of birth. He was cited for driving under suspension, failure to stop at a stop sign and giving false information at a traffic stop.[5]

**The Trial Court's Ruling on the Motion to Dismiss**

{¶ 25} On July 15, 2020, the trial court issued an order granting Berry's motion to dismiss on statute of limitations grounds. The trial court explained its ruling as follows:

> The court finds that the relevant time line is as follows: the incident occurred on January 8, 1995. The defendant was subsequently indicted on December 30, 2014. The initial arraignment, to which the defendant failed to appear[,] was held on January 14, 2015. Defendant was subsequently arrested December 7, 2016, 22 years after the incident. At the hearing, the court specifically notes that the testimony of Inv. Riolo was simply a reiteration of the testimony taken by the court at trial several years earlier. The testimony of Inv. Riolo added no new relevant evidence to the issue of the statute of limitations analysis rendered by the Eighth District in *State v. Berry*, 8th Dist. Cuyahoga No. 106415, 2018-Ohio-4855. Further, the court finds that the testimony of Det. Riegelmayer [is] inconsequential as the investigation performed by the Sheriff's Department occurred after the 20 year statute of limitations had already expired. Possibly, had these

---

[5] In addition to the witness testimony, the state also introduced several other exhibits, including copies of the capias on the indictment, the Cuyahoga County Sheriff's Office duty reports dated February 10, 2015 and March 22, 2016, Berry's December 5, 2016 traffic citation and a printout of the municipal court docket relating to Berry's December 5, 2016 traffic citation.

steps been taken prior to the expiration of the statute of limitations, the court could have found that the state did, in fact, exercise the reasonable diligence required by law. *See* R.C. 2901.13(A)(3). However, because the related events testified to at the hearing took place after the expiration of the statute of limitations, said events cannot be considered as evidence that reasonable diligence occurred prior to the expiration of the statute of limitations o[n] January 8, 2015.[6]

{¶ 26} The state appealed, raising the following single assignment of error for review:

The trial court erred in dismissing this case because the defendant's prosecution did not violate the statute of limitations.

**Law and Analysis**

{¶ 27} The state argues that the trial court erred in dismissing the indictment on statute of limitations grounds because the trial court (1) "failed to consider law enforcement efforts to bring Berry to justice, that occurred after the natural expiration of the statute of limitations" and (2) "failed to consider that the statute of limitations was tolled as of the date the indictment was filed * * * because of the reasonable efforts that were undertaken to locate and apprehend Berry on the

---

[6] Because the trial court found that the state did not commence prosecution within the statute of limitations, it did not consider Berry's argument that there was unjustifiable preindictment delay. There is, however, considerable evidence in the record to support that argument, particularly given that Berry's identity was known to police in 1995, police arrested Berry in February 1995, the state apparently ceased all investigation of the crime shortly after the incident until late 2012 when S.S.'s rape kit was submitted for testing, no new evidence linking Berry to the crime was uncovered before the state indicted Berry in 2014 and key witnesses were allegedly lost or unavailable as a result of the state's inexplicable delay in prosecution. Because the trial court did not address that issue below and the parties did not address the issue in their appellate briefs, we do not address it further here.

indictment." Alternatively, the state argues that its prosecution of Berry was timely due to Berry's efforts to evade prosecution.

**Standard of Review**

{¶ 28} When reviewing a trial court's decision on a motion to dismiss for failure to comply with the statute of limitations, we accord deference to the trial court's findings of fact, but engage in a de novo review of the trial court's legal conclusions and its application of the facts to the law. *See, e.g., Cleveland v. Bermudez*, 8th Dist. Cuyahoga No. 109018, 2020-Ohi0-4296, ¶ 6. De novo review requires an independent review of the trial court's decision without any deference to the trial court's determination. *State v. Kehoe*, 8th Dist. Cuyahoga No. 106385, 2018-Ohio-3589, ¶ 17.

**Criminal Statute of Limitations**

{¶ 29} In this case, the criminal conduct at issue occurred in 1995. At that time, the statute of limitations for rape and kidnaping was six years. By amendment effective March 9, 1999, the Ohio General Assembly extended the statute of limitations for rape and kidnapping from 6 to 20 years. *See* former R.C. 2901.13(A)(3)(c) (prosecution for a violation of R.C. 2907.02 and 2905.01 "shall be barred unless it is commenced within twenty years after the offense is committed"). The amendment applied retroactively to offenses committed prior to the amendment, provided that the statute of limitations had not yet expired by March 9, 1999. *See State v. Copeland*, 8th Dist. Cuyahoga No. 89455, 2008-Ohio-234, ¶ 11-12.

{¶ 30} The six-year statute of limitations applicable to the offenses at issue had not yet expired when the General Assembly's amendment of R.C. 2901.13 became effective in March 1999. Accordingly, the 20-year statute of limitations applies here.[7]

{¶ 31} A criminal statute of limitations "limit[s] exposure to prosecution to a certain fixed period of time following the occurrence of those acts the General Assembly has decided to punish by criminal sanctions." *State v. Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.*, 85 Ohio St.3d 582, 586, 709 N.E.2d 1192 (1999). It is "'designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time,'" "'to minimize the danger of official punishment because of acts in the far-distant past'" and "to encourag[e] law enforcement officials to promptly investigate suspected criminal activity." *Id.*, quoting *Toussie v. United States*, 397 U.S. 112, 114-115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). In other words, the purpose of a criminal statute of limitations is not to give offenders a chance to avoid criminal responsibility for their actions, but rather, "to discourage inefficient or dilatory law enforcement" and ensure that a criminal prosecution is "'"based on reasonably fresh, and therefore more trustworthy evidence.'"" *Climaco* at 586, quoting *State v. Hensley*, 59 Ohio St.3d 136, 138, 571 N.E.2d 711 (1991), quoting the Ohio Legislative

---

[7] Effective July 16, 2015, the statute of limitations for rape extended to 25 years. R.C. 2901.13(A)(4). The amendment applies retroactively to an offense committed prior to July 16, 2015 "if prosecution for that violation was not barred * * * as it existed on the day prior to July 16, 2015." R.C. 2901.13(L).

Service Commission comment to R.C. 2901.13; *see also Copeland* at ¶ 10 ("'The statute of limitations provides the 'primary guarantee against bringing overly stale criminal charges.'"), quoting *State v. Henley*, 8th Dist. Cuyahoga No. 86591, 2006-Ohio-2728, ¶ 5. The state bears the burden of proving that a prosecution falls within the statute of limitations. *State v. Hawkins*, 2019-Ohio-5133, 150 N.E.3d 519, ¶ 12 (8th Dist.), citing *Climaco* at 587.

{¶ 32} A criminal prosecution is barred unless it is "commenced" within the applicable statute of limitations. R.C. 2901.13(A)(3). Pursuant to former R.C. 2901.13(E) (now R.C. 2901.13(F)),[8] a prosecution is "commenced"

> on the date an indictment is returned or an information filed, or on the date a lawful arrest without a warrant is made, or on the date a warrant, summons, citation, or other process is issued, whichever occurs first. A prosecution is not commenced by the return of an indictment or the filing of an information unless reasonable diligence is exercised to issue and execute process on the same. A prosecution is not commenced upon issuance of a warrant, summons, citation, or other process, unless reasonable diligence is exercised to execute the same.

{¶ 33} Former R.C. 2901.13(G) (now R.C. 2901.13(H)) further provides:

> The period of limitation shall not run during any time when the accused purposely avoids prosecution. Proof that the accused departed this state or concealed the accused's identity or whereabouts is prima-facie evidence of the accused's purpose to avoid prosecution.

{¶ 34} The state contends that prosecution of this case was timely commenced and that the state exercised the reasonable diligence required under

---

[8] At the time the indictment was issued in 2014, this section was codified under R.C. 2901.13(E). The statute was amended in 2015, and this section is now codified under R.C. 2901.13(F). Likewise, former R.C. 2901.13(G) is now codified under R.C. 2901.13(H).

former R.C. 2901.13(E) because (1) an indictment was filed prior to the expiration of the statute of limitations, (2) a warrant was issued, (3) a summons was served via commercial carrier, (4) a capias issued when Berry did not appear in court on the date scheduled for his arraignment, (5) after the warrant was issued, the warrant unit went back to Berry's mother's house looking for him, (6) the Sheriff's Department "acted on any viable information regarding * * * Berry" and (7) Berry gave false contact information to a police officer during the December 2016 traffic stop.

{¶ 35} In this case, the indictment was returned on December 30, 2014. That same day, a warrant was issued on the indictment and a summons was sent out to Berry via Federal Express. The following day, a capias was "printed and sent to sheriff." All of this occurred approximately one week before the expiration of the statute of limitations.

{¶ 36} Under former R.C. 2901.13(E), a prosecution is not "commenced" merely by the return of an indictment or the issuance of a summons or warrant. In order for the return of an indictment or the issuance of a summons or warrant to "commence" a criminal prosecution, the statute requires the exercise of reasonable diligence in the issuance and execution of process on the indictment or in the execution of the warrant or summons. '"[A] prosecution is not commenced so as to toll the running of the statute of limitations merely by the issuance of a summons or warrant. It is commenced by the issuance of a summons or warrant plus the exercise

of reasonable diligence to execute the same.'"  *Hawkins*, 2019-Ohio-5133, at ¶ 15, quoting *State v. Morris*, 20 Ohio App.3d 321, 322, 486 N.E.2d 168 (10th Dist.1984).

{¶ 37} Once a defendant raises the issue that the statute of limitations has expired, the state has the burden to show that it exercised the requisite "reasonable diligence" in executing the summons or warrant.  *See, e.g., Bermudez*, 2020-Ohio-4296, at ¶ 9; *Hawkins* at ¶ 16.  The Ohio Supreme Court has defined "reasonable diligence" as "'[a] fair, proper and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity.'"  *Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), quoting *Black's Law Dictionary* 412 (5th Ed.1979).  What constitutes reasonable diligence depends on the particular facts and circumstances of the case.  *Bermudez* at ¶ 8, citing *Sizemore* at 332.

{¶ 38} In this case, the state indicted Berry on December 30, 2014 — a few days before the statutory time ran — but he was never served with the summons and was not arrested until nearly two years later — well past the statutory time for prosecution.  Following a thorough review of the record and consideration of all of the relevant facts and circumstances, we conclude that the state has not met its burden of establishing that it exercised reasonable diligence in executing the summons or warrant as required to timely commence prosecution under former R.C. 2901.13(E).

**Reasonable Diligence in Executing the Summons or Warrant**

{¶ 39} "Once a warrant is issued, it must be executed by either an arrest or summons using reasonable diligence in compliance with Crim. R. 4(D)." *State v. Pannell*, 2017-Ohio-4286, 92 N.E.3d 280, ¶ 18 (5th Dist.), citing *State v. Greer*, 2 Ohio App.3d 399, 442 N.E.2d 473 (1st Dist.1981). In general, the state exercises "reasonable diligence" when it can demonstrate that it made an effort to serve the summons in a manner provided by Crim.R. 4(D). *Bermudez*, 2020-Ohio-4296, at ¶ 8, citing *State v. Stevens*, 8th Dist. Cuyahoga No. 67400, 1994 Ohio App. LEXIS 5772, 4 (Dec. 22, 1994), citing *State v. Morris*, 20 Ohio App.3d 321, 322-323, 486 N.E.2d 168 (10th Dist.1984); *see also State v. Gallant*, 174 Ohio App.3d 264, 2007-Ohio-6714, 881 N.E.2d 907, ¶ 28 (3d Dist.) ("To constitute reasonable diligence under R.C. 2901.13(E) service of the summons and complaint must first be in accordance with Crim.R. 4(D).") (emphasis deleted).

{¶ 40} Here, however, there appears to be no dispute that the summons was not served in compliance with former Crim.R. 4(D). As it existed in 2014, Crim.R. 4(D)(3) provided, in relevant part:

> Summons may be served upon a defendant by delivering a copy to the defendant personally, or by leaving it at the defendant's usual place of residence with some person of suitable age and discretion then residing therein, or, except when the summons is issued in lieu of executing a warrant by arrest, by mailing it to the defendant's last known address by certified mail with a return receipt requested. When service of summons is made by certified mail it shall be served by the clerk in the manner prescribed by Civil Rule 4.1(1).

Thus, in 2014, Crim.R. 4(D) did not provide for service via commercial carrier, as occurred here. Accordingly, the effort to serve Berry with the summons via Federal Express on December 30, 2014 did not constitute reasonable diligence. *See, e.g., Gallant* at ¶ 28 (3d Dist.) (where Crim.R. 4(D) does not provide for service via regular U.S. mail, state's attempt to serve summons via regular U.S. mail could not constitute reasonable diligence under former R.C. 2901.13(E)); *Morris*, 20 Ohio App.3d at 323, 486 N.E.2d 168 ("[I]n order to ground a claim that reasonable diligence was exercised, the prosecution first was required to demonstrate that an effort had been made to serve the summons in a manner provided by Crim. R. 4(D). Because this threshold requirement was not complied with, the inquiry need not progress to the stage where a determination need be made whether an effort to comply with the provisions of Crim. R. 4(D) amounted to an exercise of reasonable diligence to execute the summons.").

{¶ 41} Further, although the warrant issued on December 30, 2014 listed an address of 16210 Arcade Avenue, Cleveland, Ohio 44110 for Berry, the docket indicates that the summons was sent to Berry at a different address — 3002 E. 71st Street, Cleveland, Ohio 44104.[9] The docket reflects that it was returned a week later as a "bad address." There is nothing in the record that indicates the source of the 3002 E. 71st Street address, why that address was believed to have been associated with Berry or why the summons was sent to Berry at that address. There is nothing

---

[9] Although the state had previously asserted that this was Berry's "last known current address," there is nothing in the record before us to support that assertion.

in the record to indicate that any subsequent attempts to serve the summons were made at that address, the Arcade Avenue address or any other address after the state was notified of failure of service. Although whether the state exercised reasonable diligence depends upon the facts and circumstances of each case, "generally a single attempt to serve a defendant in compliance with Crim.R. 4(D) is insufficient to constitute reasonable diligence." *Gallant* at ¶ 30; *see also State v. King*, 103 Ohio App.3d 210, 212-213, 658 N.E.2d 1138 (10th Dist.1995) (state did not show reasonable diligence when it made only one attempt to serve defendant with summons where defendant's whereabouts "could have been easily ascertained"); *State v. Myers*, 8th Dist. Cuyahoga No. 87973, 2007-Ohio-279, ¶ 4, 17 (state did not demonstrate reasonable diligence in attempting to serve defendant where no additional efforts were made to serve him after a failed certified mail attempt); *State v. McNichols*, 5th Dist. Stark No. 2000CA00058, 2000 Ohio App. LEXIS 4071, 9 (Sept. 5, 2000) (single attempt to serve defendant in twelve years "does not demonstrate due diligence"). Accordingly, the state has not shown that it exercised reasonable diligence in the execution of the summons.

{¶ 42} Nor has the state shown that it exercised reasonable diligence in the execution of the warrant. First, it is undisputed that — other than the failed, improper attempt at service of the summons via Federal Express — no effort was

made to execute the summons or warrant prior to the natural expiration of the statute of limitations on January 8, 2015.[10]

{¶ 43} Second, although the state asserts in its brief that the Sheriff's Department acted upon "any viable information regarding * * * Berry," the state presented evidence that only two attempts were made to locate Berry in the two years after the warrant was issued — once on February 10, 2015 at the 16210 Arcade Avenue address and a second time, more than a year later, on March 22, 2016, first at an address on 1720 Allandale Avenue in East Cleveland, and then, again, at the 16210 Arcade Avenue address. There is nothing in the record to indicate what led police to believe Berry might be connected to the 1720 Allandale Avenue address.

{¶ 44} When Berry attempted to contact Investigator Riolo and left a voicemail message for him on January 14, 2015, no attempt was made to locate Berry until nearly a month later. Even though Berry visited his children with Banks, no attempt was made by the Sheriff's Department to locate Berry at that address. Although Woods gave Investigator Riolo two telephone numbers for Berry, there is no indication in the record that anyone ever attempted to contact Berry through

---

[10] The trial court held that only actions conducted during the limitations period could be considered in determining whether the state exercised reasonable diligence under former R.C. 2901.13(E). The state challenges this interpretation of former R.C. 2901.13(E) and asserts that under the plain language of the statute, consideration of reasonable diligence is not limited to conduct that occurred prior to the natural expiration of the statute of limitations. We acknowledge that no such limitation appears in the language of former R.C. 2901.13(E). However, we need not resolve the issue here because even considering what occurred after the natural expiration of the statute of limitations, we find that the state has not met its burden of demonstrating that it exercised reasonable diligence in executing the summons or warrant.

those telephone numbers after Investigator Riolo called the numbers sometime on or after December 17, 2014 and "didn't get an answer." And although a "family friend" had informed police when they visited the Arcade Avenue address on March 22, 2016 that he had seen Berry at the home less than a week earlier, police did nothing further to follow up on that lead. No other addresses were checked.[11] No further attempts to locate Berry were made. The only reason Berry was ultimately arrested was because he committed an unrelated traffic violation.

{¶ 45} "Reasonable diligence requires taking steps which an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address." *Sizemore*, 6 Ohio St.3d at 332, 453 N.E.2d 632. It requires the "use [of] common and readily available sources" in searching for a defendant. *Id.*

{¶ 46} Detective Riegelmayer testified that it was a "standard affair" when "researching a warrant" in the fugitive unit to "research the person," e.g., to obtain information from "[the] bureau of motor vehicles, where they say they reside from their ID, to their criminal history, to past arrests and where they were located." However, despite the fact that Berry had remained in Cuyahoga County since 1995, there is no indication in the record that the Sheriff's Department did this with respect to Berry. There is nothing in the record to suggest the Sheriff's Department

---

[11] Berry asserts in his brief that "[t]he state had other options that they did not explore" and asserts that "[a] check on the Sheriff's Department website identifies six addresses on file for Albert Berry" and that "[t]he Clerk's Office as well had several addresses for Berry." However, Berry's assertions in his brief are not supported by citations to any evidence in the record.

searched bureau of motor vehicle records, court records, tax records, child support payment records, employment records or any other available records for contact information for Berry.

{¶ 47} Detective Riegelmayer further testified that if the fugitive unit "can't find someone," they will "send things out to many different platforms," such as Facebook, Twitter and Crimestoppers, "to see if we could get any call backs or anyone that would call in to let us know anonymously whether or not they had seen the person" or will "push it to our marshall's fugitive unit or sometimes contact * * * the FBI depending on the type of crime." Detective Riegelmayer, however, could not state whether any of these steps had been taken with respect to Berry.

{¶ 48} The state has not identified any cases in its brief in which reasonable diligence was found to have been exercised under circumstances similar to those present here. *Cf. Morris*, 20 Ohio App.3d at 322-323, 486 N.E.2d 168 (prosecution was not commenced within the two-year limitation period and was barred where "no effort at all was made to execute the warrant issued * * * within two years after the offense was alleged to have been committed"); *State v. Jackson*, 8th Dist. Cuyahoga No. 86755, 2006-Ohio-2468, ¶ 10 (state failed to show it exercised "any diligence" much less the requisite "reasonable diligence" where it served the defendant in 1999 but the summons was returned, marked "address unknown" and no additional efforts were made to serve or locate the defendant until 2005); *Pannell*, 2017-Ohio-4286, 92 N.E.3d 280, at ¶ 29 (three attempts at service in eight years did not demonstrate reasonable diligence where there was no evidence the

state approached the residence where defendant was thought to live and other locations were never investigated); *State v. Jenkins*, 5th Dist. Stark No. 2009-CA-00150, 2010-Ohio-2719, ¶ 60 (lone attempt to locate defendant by contacting his mother on one occasion did not demonstrate "due diligence"); *State v. McGhee*, 5th Dist. Delaware No. 00CA-A-12-040, 2001 Ohio App. LEXIS 2813, 8 (June 20, 2001) ("A twenty-first century definition of 'reasonable diligence' * * * must naturally reflect the advancing availability of telecommunications and information technology for this task.").

**Efforts to Avoid Prosecution**

{¶ 49} The state argues that even if it did not establish reasonable diligence in the execution of the summons or warrant, its prosecution of Berry was still timely because the statute of limitations tolled under former R.C. 2901.13(G) (now R.C. 2901.13(H)) based on Berry's efforts to avoid prosecution.

{¶ 50} The purpose of the tolling provision is "to prevent the accused from benefiting from the statute of limitations when he or she has purposely acted to avoid being prosecuted, thereby causing the state to fail to commence a timely prosecution." *State v. Bess*, 126 Ohio St.3d 350, 2010-Ohio-3292, 933 N.E.2d 1076, ¶ 24. The state contends that because Berry initially gave a false name when he was pulled over for a traffic stop in December 2016, this meant that Berry was "aware of the investigation all along" and was "avoiding prosecution." We disagree.

{¶ 51} The fact that Berry gave police a false name at a traffic stop on December 5, 2016 — 22 years after the incident — does not establish that he acted

purposely to prevent the state from commencing a timely prosecution. Berry had never been served in the case and, by the time of the traffic stop, the statute of limitations had long since run. There is nothing in the record to indicate that Berry had previously done anything to conceal his whereabouts or did anything to purposely avoid prosecution after his arrest in 1995. The record reflects that Berry had been living openly in Cuyahoga County since the incident. Banks testified that Berry had been living with her on and off from 1998 until 2014 or 2015 and that he had never left Cuyahoga County. Investigator Riolo testified that he had no information or evidence that Berry had ever left the jurisdiction. After Berry learned that Investigator Riolo was looking for him, Berry initiated contact with Investigator Riolo, calling him on January 14, 2015. When Investigator Riolo did not pick up, Berry left a voicemail message. Because the voicemail message was not preserved or transcribed, the specific contents of that message are unknown. However, there is no claim that Berry provided any false or misleading information regarding his whereabouts in his voicemail message to Investigator Riolo. Based on the record before us, the trial court did not err in concluding that the statute of limitations was not tolled due to Berry's purposeful efforts to avoid prosecution.

{¶ 52} Because the state did not meet its burden of establishing that it exercised reasonable diligence in executing the summons or warrant or that the statute of limitations was tolled due to Berry's purposeful efforts to avoid prosecution, the trial court did not err in granting Berry's motion to dismiss. The state's assignment of error is overruled.

**{¶ 53}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR