[Cite as *State v. Mughni*, 2022-Ohio-626.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-210334 |
| | | C-210335 |
| Plaintiff-Appellant, | : | C-210336 |
| | | TRIAL NOS. 20CRB-8891 A-C |
| vs. | : | |
| | : | *O P I N I O N.* |
| JULAID MUGHNI, | | |
| Defendant-Appellee. | : | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: March 4, 2022

*Andrew W. Garth,* City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Elyse Deters,* Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller,* Hamilton County Public Defender, and *David H. Hoffman*, Assistant Public Defender, for Defendant-Appellee.

**BERGERON, Presiding Judge.**

{¶1} Police arrested defendant-appellee Julaid Mughni eight-and-a-half months after a warrant was issued for his arrest. A few days later, Mr. Mughni moved to dismiss the charges, arguing that the initiation of the prosecution violated his constitutional right to a speedy trial. The trial court agreed, granting Mr. Mughni's motion to dismiss. On appeal, the state challenges the dismissal under the controlling *Barker* factors. We, however, disagree with the state's position and affirm the judgment of the trial court.

I.

{¶2} This case stems from an alleged physical altercation in May 2020. After the assailant left the scene of the altercation, the alleged victim contacted the police. When police arrived at the scene, the victim identified Mr. Mughni as the assailant. Cincinnati police subsequently filed a warrant for Mr. Mughni's arrest, but the officer who completed that task made no attempt to track Mr. Mughni down. Indeed, as far as the record discloses, the state made no effort at all to effectuate the arrest. Eight-and-a-half months later, police finally arrested Mr. Mughni on this warrant (although the record fails to disclose how the police located him at that time).

{¶3} Mr. Mughni was arraigned on three misdemeanor offenses—violation of a protection order, assault, and unlawful restraint. Four days after his arrest, he moved to dismiss for violation of his right to a speedy trial under the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. Surveying the record at hand, the trial court granted the motion to dismiss, precipitating the state's appeal.

II.

{¶4} The state's sole assignment of error maintains that the eight-and-a-half-month delay in initiating the prosecution against Mr. Mughni did not run afoul of his right

to a speedy trial under the *Barker* factors, described in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

{¶5} "Both the United States and the Ohio Constitution guarantee the right to a speedy trial." *State v. Gage*, 2018-Ohio-480, 104 N.E.3d 994, ¶ 25 (1st Dist.), citing *State v. Meeker*, 26 Ohio St.2d 9, 268 N.E.2d 589 (1971), paragraph one of the syllabus. The right to a speedy trial is "applicable to unjustifiable delays in commencing prosecution, as well as to unjustifiable delays after indictment." *Meeker* at paragraph three of the syllabus. "To determine whether a particular delay is constitutionally reasonable, a court must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *State v. Muhammadel*, 1st Dist. Hamilton No. C-190683, 2021-Ohio-567, ¶ 10, citing *Barker* at 530. "Review of a speedy-trial claim involves a mixed question of law and fact. Therefore, we defer to the trial court's factual findings if they are supported by competent, credible evidence, but we review the application of the law to those facts de novo." *Muhammadel* at ¶ 12.

A.

{¶6} "The length-of-the-delay inquiry serves as a threshold inquiry that a defendant must satisfy before triggering further analysis under the *Barker* factors. Generally, as a delay between formal accusation and arrest approaches one year, the delay triggers further analysis." *Muhammadel* at ¶ 13.

{¶7} The state relies on *State v. Sears*, 166 Ohio App.3d 166, 2005-Ohio-5963, 849 N.E.2d 1060 (1st Dist.), to posit that a delay of less than nine months is insufficient (as a matter of law) to violate the defendant's right to a speedy trial. In *Sears*, the court held that a nine-month delay in initiating prosecution violated the defendant's right to a speedy trial where the state made no efforts to serve the warrant on the defendant. *Id.* at ¶ 17. But *Sears* did not hold that a defendant's right to a speedy trial can only be violated if the delay

3

exceeds nine months. Indeed, we acknowledged in *Sears* that *Barker* "specifically rejected setting a fixed approach to speedy-trial analysis, finding that there could be no constitutional basis for specifying a set number of days or months. * * * [A] post-accusation delay is presumptively prejudicial as it approaches one year." *Id.* at ¶ 11.

{¶8} We decline the state's invitation to draw an indelible nine-month line in the sand for establishing a violation of the defendant's right to a speedy trial. Indeed, some federal courts have found eight-month delays sufficient to warrant further scrutiny. *See, e.g.*, *United States v. Woolfolk*, 399 F.3d 590, 598 (4th Cir.2005) (holding that an eight-month delay was presumptively prejudicial, explaining that " 'it may generally be said that any delay of eight months or longer is presumptively prejudicial.' * * * [T]he eight month threshold is a general rule and not a rigid requirement"), quoting 4 Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, *Criminal Procedure* (2d Ed.1999); *United States v. Johnson*, 579 F.2d 122, 123 (1st Cir.1978) (eight-month delay between arraignment and trial warranted further scrutiny under the *Barker* factors given the "simple nature of the charge" against the defendant); *United States v. Jackson*, 473 F.3d 660, 665 (6th Cir.2007), citing Gregory P.N. Joseph, *Speedy Trial Rights in Application*, 48 Fordham L.Rev. 611, 623 (1980), fn. 71 ("There seems general agreement that any delay of eight months or longer is 'presumptively prejudicial.' "). Of course, an eight-and-a-half-month delay weighs less heavily in favor of dismissal than a nine-month delay, but we believe that an eight-and-a-half-month delay is approaching a year, and therefore, sufficient to trigger the remainder of the analysis. Accordingly, the trial court did not err by assessing the remaining three *Barker* factors.

B.

{¶9} For the second *Barker* factor, we focus on "the state's explanation for the delay." *Muhammadel*, 1st Dist. Hamilton No. C-190683, 2021-Ohio-567, at ¶ 15. "The state

4

has the burden of ensuring a speedy trial, but a pretrial delay is 'often both inevitable and wholly justifiable.' " *Id.,* quoting *Doggett v. United States,* 505 U.S. 647, 656, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). "Different reasons for delay are afforded 'different weights.' " *Muhammadel* at ¶ 16, quoting *Barker*, 407 U.S. at 531, 92 S.Ct. 2182, 33 L.Ed.2d 101. "A deliberate delay by the government weighs heavily against the state. Delay resulting from a neutral reason such as negligent conduct of the government weighs less heavily." (Citation omitted.) *Muhammadel* at ¶ 16. "Intertwined with this analysis is consideration of whether the defendant shares any responsibility for the delay." *Id.* at ¶ 17.

{¶10} On appeal, the state mentions the fact that Mr. Mughni might have been homeless as a potential justification for the delay in serving the warrant, but it failed to develop or substantiate this point before the trial court. *See State ex rel. Zollner v. Indus. Comm. of Ohio*, 66 Ohio St.3d 276, 278, 611 N.E.2d 830 (1993) ("A party who fails to raise an argument in the court below waives his or her right to raise it here."). In *Muhammadel*, the state believed the defendant to be homeless but actually investigated the matter, including inquiring at various homeless shelters. *Muhammadel* at ¶ 4. No similar efforts occurred here.

{¶11} The state concedes that the police made no effort to track down Mr. Mughni, pointing simply to the arresting officer's generally busy schedule as an explanation. Although we certainly see no indication that the state deliberately delayed prosecution here, its failure to conduct even a modest investigation into Mr. Mughni's whereabouts raises concern. On this record, the lack of effort to locate Mr. Mughni constitutes negligence and weighs against the state, albeit "not heavily." *Muhammadel* at ¶ 26.

C.

{¶12} The state concedes that the third *Barker* factor weighs in Mr. Mughni's favor because he timely invoked his right to a speedy trial. The only remaining question, therefore, is whether he suffered prejudice because of this delay.

{¶13} "Prejudice to the defense is the 'most serious' interest protected by the speedy-trial right, yet it is often difficult to prove." *Muhammadel*, 1st Dist. Hamilton No. C-190683, 2021-Ohio-567, at ¶ 30, quoting *Barker*, 407 U.S. at 532, 92 S.Ct. 2182, 33 L.Ed.2d 101. Generally, the first question under the prejudice analysis is whether "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter, identify." *Muhammadel* at ¶ 30. If prejudice cannot be assumed, then the next question becomes whether the defendant "made any affirmative showing of prejudice." *Id.* at ¶ 39.

{¶14} Here, the trial court found prejudice by virtue of the city's destruction of the body-camera footage, which potentially impaired Mr. Mughni's defense, including any "[a]libi defense." Per the city's policy, body-camera footage is destroyed 90 days after its creation unless a request to preserve the footage is made (and, of course, a defendant cannot request preservation before he is even aware that he is a defendant). Mr. Mughni insists that he could have used the recording to impeach the victim's testimony. The state counters that his assertion of prejudice seems more speculative than actual.

{¶15} We have recently rejected a claim that the destruction of body-camera evidence automatically prejudiced the defendant where "the record [did] not suggest that the recording * * * captured anything relevant to [the] defense, even for impeachment purposes." *Id.* at ¶ 41. Unlike in *Muhammadel*, however, here the trial court made a factual determination that the defense was undermined by the absence of the body-camera footage. Moreover, *Muhammadel* sat in a different procedural posture than this case because the

matter proceeded through trial, and the trial record confirmed that the availability of the body-camera footage would not have impacted the outcome of the case.

{¶16} We have no similar assurances here, and the trial court found, as a factual matter, to the contrary. Under these circumstances, we are inclined to defer to the trial court's determination that Mr. Mughni suffered prejudice.

{¶17} In sum, on the facts at hand, all four of the *Barker* factors weigh in Mr. Mughni's favor.

\*     \*     \*

{¶18} In light of the foregoing, we overrule the state's sole assignment of error and affirm the judgments of the trial court.

Judgments affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion

7