[Cite as *State v. Benton*, 2023-Ohio-153.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210476 |
| | | TRIAL NO. C-20CRB-21903 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| JALIL BENTON, | : | |
| Defendant-Appellee. | : | |


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: January 20, 2023


*Mark Piepmeier*, Interim Hamilton County Prosecuting Attorney, and *Ronald Springman*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellee.

**CROUSE, Judge.**

{¶1}    Jalil Benton was arrested six-and-a-half months after the police filed a complaint charging him with domestic violence, a first-degree misdemeanor.  Benton filed a motion to dismiss, contending that the six-and-a-half-month delay between the filing of the complaint and his arrest violated his constitutional right to a speedy trial.  After a hearing, the trial court agreed and dismissed the charge.  On appeal, the state argues that the trial court erred when it engaged in a full speedy-trial analysis pursuant to *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), because it contends that the six-and-a-half-month delay was not sufficiently long to trigger such an analysis.  For the following reasons, we overrule the state's assignment of error and affirm the judgment of the trial court.

### *Factual and Procedural Background*

{¶2}    Jalil Benton was charged with domestic violence on November 15, 2020, and a warrant was issued for his arrest.  On May 31, 2021, Benton was arrested for the charge.  On June 10, 2021, Benton filed a motion to dismiss, which was supplemented on August 18, 2021, contending that the delay between the filing of the complaint and his arrest violated his constitutional right to a speedy trial.

{¶3}    At the hearing on the motion, North College Hill Police Officer Zachary Whyle testified that he responded to a call from Nianah Shaw who alleged that Benton had pushed her head against a framed picture.  Whyle testified that "upon our initial dispatch, they stated that he had left the scene, so I checked the area."  Whyle had a description of Benton's vehicle and spent "[s]omewhere between 5 and 10 minutes" looking for him, but was unsuccessful.  Whyle testified that Shaw provided Benton's phone number, but the police were in possession of his phone, so they did not try to call.  And while Benton's registered address was the address of the alleged incident,

Shaw reported that Benton no longer lived there. After the warrant was issued, no other attempts were made to locate or notify Benton.

{¶4} Besides Shaw and Benton, there were no other witnesses to the domestic-violence incident. Although Whyle was wearing a body camera at the time of his investigation, he testified that the body-camera video was most likely deleted pursuant to the department's retention policy.[1] Whyle testified that the video "would have shown a broken glass from a picture frame that was on the wall in line with Ms. Shaw's statements," in addition to Shaw's demeanor and her statement to police. Whyle testified that he remembered seeing the broken glass and looking for Benton's vehicle, but that given that "it's been awhile" since the incident, he could "remember some things. Just not everything."

{¶5} Benton testified that he had no knowledge of the arrest warrant. Benton stated that he was never contacted by police about the warrant, and did not learn about it until he was arrested. He stated that he spoke with Shaw in 2021 after the incident, and that she knew how to contact him. Benton was not familiar with the phone number that Shaw gave to the police.

{¶6} After a hearing on the motion, the trial court found that Benton's constitutional speedy-trial right was violated by the delay and dismissed the charge.

{¶7} The state now appeals, arguing that the trial court erred in concluding that Benton's constitutional rights were violated because the delay in initiating the arrest was not "presumptively prejudicial," and therefore, was insufficient to trigger a *Barker* speedy-trial analysis. *See Barker*, 407 U.S. at 530, 92 S.Ct. 2182, 33 L.Ed.2d

---

[1] **PROSECUTOR:** So most likely—you can't say for certain today, but most likely that video, if it ever existed, no longer exists?
**WHYLE:** Yes.

101 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.").

### *Standard of Review*

**{¶8}** The review of a speedy-trial claim involves a mixed question of law and fact. *See State v. Long*, 163 Ohio St.3d 179, 2020-Ohio-5363, 168 N.E.3d 1163, ¶ 15. Therefore, we defer to the trial court's factual findings, including findings of historical facts, if they are supported by competent, credible evidence. *Id.* We then independently determine whether the trial court properly applied the law to the facts. *Id.*

### *Law and Analysis*

**{¶9}** "Both the United States and the Ohio Constitution guarantee the right to a speedy trial." *State v. Gage*, 2018-Ohio-480, 104 N.E.3d 994, ¶ 25 (1st Dist.), citing *State v. Meeker*, 26 Ohio St.2d 9, 268 N.E.2d 589 (1971), paragraph one of the syllabus. This right applies to delays in prosecution. *Meeker* at paragraph three of the syllabus. To determine whether a particular delay is constitutionally reasonable, a court must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. *Barker* at 530.

**{¶10}** In holding that Benton's right to a speedy trial was violated, the trial court stated, "I am not finding that it is a presumptively prejudicial delay of six and a half months. I understand that factor, but I am finding that is prejudicial." The court then went on to weigh the remaining *Barker* factors. The court found that the state did not have any reason for the delay. The court stated, "I have a real problem with this prong. * * * that's not enough looking for someone for 5 minutes around the North

College Hill area. That is not enough over six months." The court found that Benton timely asserted his speedy-trial right. The court lastly found that Benton suffered actual prejudice "because there is no body worn camera."

{¶11} In its sole assignment of error, the state argues that "The trial court erred in dismissing the domestic violence charge against defendant based on allegations his constitutional rights to speedy trial were violated." In this appeal, the state does not take issue with the trial court's *Barker* findings, explain why the court's findings were not supported by competent, credible, evidence, or argue that the court improperly weighed the *Barker* factors. Rather, the state argues that the trial court erred in engaging in a *Barker* analysis at all. According to the state, because the court stated that it was "not finding that it is a presumptively prejudicial delay," the court erred by engaging in "a complete analysis of the *Barker* four-factor test used to evaluate the constitutionality of pretrial delay."

{¶12} In *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the United States Supreme Court held that the length of delay to trigger a *Barker* analysis must cross the threshold from "ordinary" to "presumptively prejudicial delay." "[I]n other words, the length of the delay must be sufficiently prejudicial to warrant further review of the speedy-trial claim." *State v. Long,* 163 Ohio St.3d 179, 2020-Ohio-5363, 168 N.E.3d 1163, ¶ 50 (Dewine, J., dissenting). However, no case has drawn a specific line regarding exactly how many months will trigger a *Barker* analysis. This is because *Barker* "specifically rejected setting a fixed approach to a speedy-trial analysis, finding that there could be no constitutional basis for specifying a set number of days or months." *State v. Sears*, 166 Ohio App.3d 166, 2005-Ohio-5963, 849 N.E.2d 1060, ¶ 11 (1st Dist.). The *Barker* court reasoned that:

[B]ecause of the imprecision of the right to a speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.

*Barker*, 407 U.S. at 530-531, 92 S.Ct. 2182, 33 L.Ed.2d 101.

{¶13} The *Doggett* case later emphasized that the inquiry must be whether the delay "crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, since, by definition, [the accused] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett* at 652, quoting *Barker* at 530-531. "If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.*

{¶14} *Doggett* mentioned in a footnote that "[d]epending on the nature of the charges, lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett,* 505 U.S. at 652, 112 S.Ct. 2686, 120 L.Ed.2d 520, fn.1. Courts have generally applied this "approaching a year" rule as the point at which an ordinary delay transforms into a presumptively prejudicial delay. This has led to inconsistent results.

{¶15} In *State v. Sears*, 166 Ohio App.3d 166, 2005-Ohio-5963, 849 N.E.2d 1060 (1st Dist.), we found that a nine-month delay triggered the *Barker* analysis. *Id.* at ¶ 12. More recently, in *State v. Mughni,* 2022-Ohio-626, 185 N.E.3d 678 (1st Dist.), we stated that "[w]e decline the state's invitation to draw an indelible nine-month line

in the sand for establishing a violation of the defendant's right to a speedy trial," and held that an eight-and-a-half-month delay was "approaching a year, and therefore, sufficient to trigger the remainder of the analysis." *Id.* at ¶ 8.

{¶16} Some courts have found delays around six months to be sufficient to trigger a *Barker* analysis. *See United States v. Valentine*, 783 F.2d 1413, 1417 (9th Cir.1986) ("[W]hile the [6 month] delay in Valentine's case was not very long, it was sufficient to cause us to examine the other factors."); *United States v. Simmons*, 536 F.2d 827, 831 (9th Cir.1976) ("Although a borderline case, we hold that the six-month delay [of trial on forgery charges] was sufficiently prejudicial to trigger an inquiry into the other factors."); *See Takacs v. Engle,* 768 F.2d 122, 128 (6th Cir.1985) (delay of six-and-one-half months between arrest and trial for aggravated burglary, aggravated robbery, and felonious assault was "probably a sufficient length of time to trigger [a *Barker*] inquiry").

{¶17} Other courts have found that delays around six months are not sufficient to trigger a *Barker* analysis. *See State v. Webb*, 4th Dist. Washington No. 01CA32, 2002-Ohio-3552, ¶ 26 (delay of 186 days not presumptively prejudicial); *State v. Pinson*, 4th Dist. Scioto No. 00CA2713, 2001-Ohio-2423 (delay of six-and-a-half months not presumptively prejudicial); *State v. Davis*, 7th Dist. Mahoning No. 05 MA 235, 2007-Ohio-7216, ¶ 31 (six-month delay "does not begin to approach the time frame in which presumptive prejudice applies.").

{¶18} To be sure, any delay longer than six months is arguably "approaching a year." But, when faced with a borderline case like Benton's, rather than focus on whether the delay is "approaching a year," the question should instead be whether the delay causes any constitutional concern or is sufficiently prejudicial to warrant further

review of the speedy-trial claim. Such an inquiry is more in line with *Barker's* observation that "the right to speedy trial is a more vague concept than other procedural rights" and that it is "impossible to determine with precision when the right has been denied." *Barker*, 407 U.S. at 521, 92 S.Ct. 2182, 33 L.Ed.2d 101.

**{¶19}** The dissent accuses the majority of ignoring the trial court's finding that there was no presumptive prejudice, "judicially rewrit[ing] the *Barker* analysis," and "disregard[ing] Ohio precedent." But that is simply not the case.

**{¶20}** To "presume" means "[t]o assume beforehand; to suppose to be true in the absence of proof." *Black's Law Dictionary* 1304 (9th Ed.2009). In this case, the trial court stated that it did not have to "presume" that there was prejudice, because it found that there actually was prejudice. No presumption of prejudice was required in this case.[2] To require a finding of *presumptive* prejudice when the testimony elicited at the hearing demonstrated *actual* prejudice ignores the heart of the inquiry and works to draw that indelible line in the sand that we have been warned to avoid. Would a delay of a few more weeks, when some evidence has already been destroyed, somehow transform the case and allow the trial court to examine the *Barker* factors? Such an approach was not the aim of *Barker* or *Doggett*. Thus, we are left to determine whether the length of the delay in this particular case was sufficiently prejudicial to

---

[2] In discussing speedy-trial prejudice, the *Doggett* court explained that one important role of presumptive prejudice is to demonstrate prejudice when a defendant otherwise cannot. The court explained,

> *Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown." [*Barker*,] 407 U.S. at 532 [,92 S.Ct. 2182, 33 L.Ed.2d 101]. * * * Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay.

(Citation omitted.) *Doggett,* 505 U.S. at 655, 112 S.Ct. 2686, 120 L.Ed.2d 520.

warrant further review. Our analysis is completely in line with the *Barker/Doggett* precedent and follows the directive not to draw a line in the sand regarding the length of delay that will trigger a *Barker* analysis.

{¶21} In determining whether the six-and-a-half-month delay in this case causes any constitutional concern, we must keep in mind the "peculiar circumstances of the case," such as the fact that Benton was charged with a first-degree misdemeanor. While the allegations are serious, this is precisely the type of ordinary street crime where a lengthy delay should not be tolerated. In fact, R.C. 2945.71(B)(2) requires the state to bring a defendant to trial 90 days from the date of arrest. *Sears* noted that in evaluating the length of delay between the filing of the complaint and the service of the warrant for a first-degree misdemeanor, "we might start with a premise that any delay of more than 90 days is presumptively prejudicial." *Sears,* 166 Ohio App.3d 166, 2005-Ohio-5963, 849 N.E.2d 1060, at ¶ 10. The length of delay in Benton's case is more than twice that.

{¶22} The Sixth Amendment's speedy-trial provision has several purposes: (1) to prevent undue delay and oppressive incarceration prior to trial; (2) to reduce anxiety and concern accompanying public accusation; and (3) to limit the possibility that long delay will impair the ability of the accused to defend himself. *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In this case, because Benton was not incarcerated and had no knowledge of the criminal charges prior to his arrest, the only concern at issue is the possibility that the delay impaired the ability of Benton to defend himself. As set forth in *Doggett*, this is the "most serious form[] of prejudice, * * * because the inability of a defendant to adequately

prepare his case skews the fairness of the entire system." *Doggett*, 407 U.S. at 532, 112 S.Ct. 2686, 120 L.Ed.2d 520.

{¶23} The trial court found that there was more than a possibility that the delay impaired Benton's defense. The court found that Benton suffered *actual prejudice* due to the delay. The state has not challenged this finding.

{¶24} Benton was charged with a first-degree misdemeanor and was not arrested for six-and-a-half months, which is more than twice the statutory speedy-trial time limit. This delay led to the destruction of evidence, which the trial court found to have prejudiced the defense. Based upon the peculiar circumstances of this case, we hold that the six-and-a-half-month delay caused constitutional concern and was sufficiently prejudicial to warrant further review of Benton's speedy-trial claim. Because the state has not challenged the court's ultimate constitutional speedy-trial findings or its weighing of the *Barker* factors, we do not undertake that analysis.

{¶25} The holding in this case should by no means be interpreted to mean that a six-and-a-half-month delay will always trigger a *Barker* analysis. Rather, the peculiar facts of this case drive the outcome.

{¶26} Accordingly, we hold that trial court's examination of the remaining *Barker* factors was not in error and we overrule the sole assignment of error.

Judgment affirmed.

**BOCK, J.**, concurs.
**ZAYAS, P.J.**, dissents.

**ZAYAS, P.J.,** dissenting.

{¶27} The majority correctly acknowledges that the trial court determined that this six-and-a-half-month delay was not a presumptively prejudicial delay. Additionally, neither the state nor Benton challenged this finding. We are not at

liberty to ignore this finding and judicially rewrite the *Barker* analysis. Consequently, I must respectfully dissent.

**{¶28}** In this case, after finding that the delay was not presumptively prejudicial, the trial court proceeded to engage in the *Barker* analysis. The state maintains that, "After this finding, the trial court's analysis of Benton's speedy trial claim under *Barker* should have ended." I agree. Under *Barker*, "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530-531, 92 S.Ct. 2182, 33 L.Ed.2d 101. "Presumptive prejudice," when used in this threshold context simply "marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520, fn.1. Absent a finding of presumptive prejudice, the trial court should not have analyzed the remaining *Barker* factors.

**{¶29}** Instead of addressing the state's argument, the majority reexamines the court's determination that the delay was not presumptively prejudicial and rejects the trial court's finding. In doing so, the majority admittedly disregards Ohio precedent finding that delays around six months are not presumptively prejudicial and further concludes that a finding of presumptive prejudice was unnecessary because the trial court found actual prejudice after weighing the *Barker* factors.

**{¶30}** To justify its contrary finding, the majority concludes that "rather than focus on whether the delay is 'approaching a year,' the question should instead be whether the delay causes any constitutional concern or is sufficiently prejudicial to warrant further review of the speedy-trial claim."

{**¶31**} Perhaps that is what the question "should be," but we are bound by precedent. *Barker* is clear that the length of delay operates as a "triggering mechanism." *Barker,* 407 U.S. at 530, 92 S.Ct. 2182, 33 L.Ed.2d 101. While I recognize that presumptive prejudice is not necessarily determined by drawing a line in the sand, this does not obviate the *Barker* directive that unless the delay "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay," inquiry into the remaining Barker factors is unnecessary. *Doggett* at 651-652.

{**¶32**} Because I am bound by precedent to apply the analysis set forth in *Barker* and *Doggett*, I would reverse the trial court's judgment and remand the cause for further proceedings, including reinstatement of the complaint.

Please note:
The court has recorded its own entry this date.