[Cite as *State v. Jones*, 2025-Ohio-3297.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240449 |
| | | TRIAL NO. 23/TRD/11750/A/C |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| DAJAUAN JONES, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed in part and reversed in part, and appellant is discharged in part.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed 50% to appellant and 50% to appellee.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 9/12/2025 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Jones*, 2025-Ohio-3297.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                  :       APPEAL NO.    C-240449
                                           TRIAL NO.     23/TRD/11750/A/C

       Plaintiff-Appellee,         :

    vs.                                 :

DAJUAN JONES,             :          *O P I N I O N*

       Defendant-Appellant.     :

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Appellant
                         Discharged in Part

Date of Judgment Entry on Appeal: September 12, 2025

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney,
and *Christopher J. Powers*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann*,
Assistant Public Defender, for Defendant-Appellant.

**MOORE, Judge.**

**{¶1}** Defendant-appellant Dajuan Jones appeals the Hamilton County Municipal Court's judgment convicting him of failure to reinstate his license and failure to maintain control of his car. Jones asserts two assignments of error challenging the denial of his speedy trial motion and arguing that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. For the reasons set forth below, we affirm in part and reverse and discharge in part.

### I.     Factual and Procedural History

**{¶2}** On May 13, 2022, the Hamilton County Municipal Court issued warrants for Jones' arrest. Jones was cited for failure to control in violation of R.C. 4511.202, driving with a suspended license in violation of R.C. 4510.11, and leaving the scene of a crash in violation of R.C. 4549.02 ("hit-skip"). The charges stemmed from a 911 call alleging that Jones crashed a red 2004 Mazda Tribute into two parked cars before fleeing.

**{¶3}** While the warrants were issued on May 13, 2022, Jones was not arrested until April 29, 2023. On June 29, 2023, Jones moved for dismissal. He alleged that the State's 11-month delay in executing the warrants violated his right to a speedy trial. Jones additionally argued that the delay precluded him from putting forth an effective defense because the police officer's body-worn camera footage from the incident had not been retained.

**{¶4}** On September 6, 2023, the trial court heard oral arguments on Jones' motion to dismiss. Jones called Cincinnati Police Officer Emily Peterson, the officer who filed the citations. Peterson testified she responded to a call alleging someone crashed their car and fled from the 4800 block of Winneste Avenue. Peterson recalled

that one of the two witnesses she spoke with brought her Jones' wallet that was allegedly left next to Jones' vehicle. However, Peterson stated that she would need to review her camera's footage to be able to testify with certainty. Peterson testified that she made no attempt at serving Jones with the arrest warrants, nor did she know if anyone else had attempted to execute service.

{¶5} C.P., one of the witnesses, identified Jones as the suspect. C.P. testified that she heard a loud noise outside her house and found that Jones had crashed into her car and pushed it into her neighbor's car. C.P. stated that she observed Jones step out of a red Mazda, inspect the damage, and then flee. C.P then chased Jones' car until he parked in a nearby residential parking lot, exited the car, and ran off on foot. She found Jones' wallet next to the Mazda; it contained Jones' driver's license and credit cards.

{¶6} At the conclusion of arguments on the motion to dismiss, the court denied Jones' motion but adopted a limiting instruction in advance of trial that excluded Peterson from testifying. The court determined that this method was the "least restrictive way to manage this."

{¶7} On July 10, 2024, Jones' trial began. During the course of trial, the State amended the charge of driving under suspension to a charge of failure to reinstate a suspended license in violation of R.C. 4510.21. Since the failure to maintain control was a minor misdemeanor and the failure to reinstate count was an unclassified misdemeanor, those charges were tried to the bench, while the hit-skip charge was tried to a jury. While R.C. 4521.21(C)(1) classifies the failure to reinstate as an unclassified misdemeanor, the court below and parties erroneously classified the offense as a minor misdemeanor.

{¶8} The State called C.P. as its only witness. C.P. mostly reiterated the facts

offered at the hearing on Jones' motion to dismiss. However, C.P. now testified that she did not see Jones exit his vehicle after the collision to inspect the damage. Rather, she testified that Jones simply drove off before parking in a nearby residential lot.

**{¶9}** Jones testified that on the night of the incident, he worked from 5:30 p.m. to 5:45 a.m. at a warehouse facility in Sharonville. He further testified that he lost his wallet in February or March 2022, and that he lived at an address different from what was listed on his driver's license. Further, Jones disputed ever owning or driving a red Mazda or being at or around the area of the incident. Jones did not introduce any evidence proving that he was at a warehouse facility on the night of the incident.

**{¶10}** On July 16, 2024, the jury found Jones not guilty on the hit-skip charge. However, the judge found Jones guilty on the failure-to-reinstate and failure-to-maintain-control charges. The court fined Jones $150 for each offense. Jones timely appealed.

## II.   Analysis

**{¶11}** Jones raises two assignments of error on appeal. First, Jones argues the trial court erred when it denied his motion to dismiss because the State's 11-month postindictment delay in executing the warrants violated his constitutional right to a speedy trial. Second, Jones opines that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. These arguments are assessed in turn.

### A.  Speedy Trial

**{¶12}** Appellate review of a speedy-trial claim involves a blended question of law and fact. *State v. Long*, 2020-Ohio-5363, ¶ 15. On appeal, we defer to the trial court's factual findings so long as they are supported by competent, credible evidence, but we review the legal application of those facts de novo. *Id.*

{¶13} In determining whether the defendant's constitutional right to a speedy trial has been violated, courts consider four factors taken from *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant.

### *Length of the Delay*

{¶14} The first factor to consider is the duration of the postindictment delay in arresting the defendant. *Id.* This factor is viewed as a necessary trigger before considering the remaining *Barker* factors. *State v. Duncan*, 2021-Ohio-3229, ¶ 14 (1st Dist.), citing *Doggett v. United States*, 505 U.S. 647, 652 (1992). Courts have not adopted a specific time period to warrant further inquiry into whether a speedy-trial violation occurred. *See State v. Benton*, 2023-Ohio-153, ¶ 12 (1st Dist.). Nonetheless, this court has found a delay of nine months for a misdemeanor offense to be sufficient to trigger a speedy-trial analysis. *State v. Sears*, 2005-Ohio-5963, ¶ 12 (1st Dist.). Here, the 11-month delay in the execution of Jones' arrest triggers further consideration of the remaining *Barker* factors.

### *Reason for the Delay*

{¶15} The second factor focuses on the State's justification for the delay. *State v. Mughni*, 2022-Ohio-626, ¶ 9 (1st Dist.). Because the delay can be both inevitable and for good reason, different reasons for delay are looked upon with different levels of scrutiny. *Id.*, citing *State v. Muhammadel*, 2021-Ohio-567, ¶ 16 (1st Dist.). Acts taken with the intent to deliberately prolong the proceeding are strongly held against the State. *Id.* Comparatively, where delay is a product of a neutral reason, such as the State's negligence or failure to act, the period of time weighs less harshly against the government. *Id.*

{¶16} Here, there are competing justifications for the delay. While Jones allegedly fled the scene, this does not outweigh the fact that the State made no attempt at executing the warrants for Jones' arrest. Therefore, the second factor neutrally applies.

*Defendant's Assertion of the Right*

{¶17} Next, we consider whether Jones timely asserted the right to a speedy trial. *Barker*, 407 U.S. at 531-532. We have held that, where "the defendant sits on [his] speedy-trial rights, [this] factor weighs against the defendant." *State v. Jackson*, 2016-Ohio-5196, ¶ 14 (1st Dist.).

{¶18} The State argues that Jones' 60-day delay in asserting the right should weigh in the State's favor. We have considered the right to be timely asserted when it was invoked close to the date of arrest. *See State v. Gribbins*, 2024-Ohio-2973, ¶ 18 (1st Dist.) (holding that the defendant timely raised the defense ten days after arrest); *Mughni*, 2022-Ohio-626, at ¶ 3, 12 (1st Dist.) (holding that the defense was timely raised four days after arrest).

{¶19} Other courts have recognized that a defendant's assertion of the right to a speedy trial will cause the third factor to weigh in the defendant's favor. *State v. Watson*, 2013-Ohio-856, ¶ 40 (12th Dist.); *State v. Hilyard*, 2005-Ohio-4957, ¶ 19 (4th Dist.); *State v. Turner*, 2004-Ohio-1545, ¶ 38 (7th Dist.). While Jones waited 60 days to assert the right, his assertion of the right satisfies the third *Barker* factor.

*Prejudice to the Defendant*

{¶20} Finally, the fourth *Barker* factor focuses on whether the defendant suffered prejudice as a result of the delay. *Barker*, 407 U.S. at 531-532. Jones argued below that he suffered actual prejudice, but the trial court found his contention unpersuasive.

**{¶21}** The Court in *Barker* contemplated that the right to a speedy trial was designed (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety of the accused; and (3) to limit the possibility that the defense will be impaired. *State v. Duncan*, 2021-Ohio-3229, ¶ 22 (1st Dist.), citing *Barker* at 532. Where a defendant is prejudiced, dismissal is "the only possible remedy." *Strunk v. United States*, 412 U.S. 434, 440 (1973). The third interest is the only relevant consideration here.

**{¶22}** Prejudice can take two forms. First, we inquire whether the excessive delay "presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter, identify." *State v. Jarmon*, 2023-Ohio-2677, ¶ 24 (1st Dist.). If we cannot presume prejudice, then we assess whether the defendant has "made any affirmative showing of prejudice." *Id.*, quoting *Muhammadel*, 2021-Ohio-567, at ¶ 39 (1st Dist.).

**{¶23}** Our analysis of the presumption of prejudice turns on the State's culpability in failing to bring the defendant to trial. *Gribbins*, 2024-Ohio-2973, at ¶ 19 (1st Dist.), citing *Muhammadel* at ¶ 31. A postaccusation delay is presumptively prejudicial as it approaches one year. *Mughni*, 2022-Ohio-626, at ¶ 7 (1st Dist.). However, this court has also held that prejudice "may be presumed only in aggravated cases involving excessive delay." *State v. Duncan*, 2021-Ohio-3229, ¶ 26 (1st Dist.), citing *State v. Rogers*, 2019-Ohio-1251, ¶ 17 (1st Dist.), citing *State v. Rice*, 2015-Ohio-5481, ¶ 28 (1st Dist.).

**{¶24}** Courts have not adopted a strict time threshold to conclude that a given delay allows for prejudice to be presumed. Instead, we consider the circumstances surrounding the delay and assess the culpability of the State in creating the delay, and ask whether the delay is so egregious so as to warrant a presumption of prejudice. *State v. Bush*, 2020-Ohio-1229, ¶ 27 (1st Dist.). In *Sears*, 2005-Ohio-5963 (1st Dist.), we

8

presumed that the defendant was prejudiced where the State made no effort over nine months to execute an arrest warrant, despite having the defendant's correct address and other personal identifying information. *Id.* at ¶ 16. However, in *State v. Mead*, 2021-Ohio-1107, ¶ 29 (1st Dist.), we did not presume an 11-month delay was prejudicial because the State alleged it had difficulty in locating the defendant, who was living out of state. As stated by this court in *State v. Johnson*:

> [W]here the first three *Barker* factors weigh in favor of the defendant, "the mere negligence of the state is not enough to outweigh the absence of some particularized trial prejudice."

2024-Ohio-1700, ¶ 26 (1st Dist.), quoting *Rogers* at ¶ 18.

**{¶25}** Actual prejudice exists where the defendant's ability to present evidence or elicit testimony is compromised. *Gribbins* at ¶ 19. To demonstrate that one has been actually prejudiced by the loss of evidence, a defendant must show (1) what missing evidence the State deprived them from having, and (2) how that evidence "*would* minimize or eliminate the impact of the state's evidence and bolster the defense." (Emphasis added.) *State v. Hahaj*, 2025-Ohio-52, ¶ 23 (1st Dist.), citing *State v. Jones*, 2016-Ohio-5105, ¶ 28, citing *State v. Luck*, 15 Ohio St.3d 150, 157-158 (1984).

**{¶26}** The Court has made clear that the "word 'would' in the *Jones* decision is significant." *State v. Bourn*, 2022-Ohio-4321, ¶ 17, citing *Jones* at ¶ 28. "It is not enough for a defendant to show that [] missing evidence or unavailable testimony 'could' or 'may' help [them,] [i]nstead, [they] must show that the evidence or testimony *would* help [them]." (Emphasis in original.) *State v. Yoder*, 2025-Ohio-1633, ¶ 20 (1st Dist.), quoting *Bourn* at ¶ 17. Proof of actual prejudice must be "specific, particularized, and non-speculative." *State v. Bost*, 2021-Ohio-2190, ¶ 31 (5th Dist.), quoting *State v. Hines*, 2019-Ohio-5039, ¶ 12 (3d Dist.).

9

**{¶27}** Whether presumed or actual, the State may rebut or offer evidence to demonstrate that a defendant has not been prejudiced. *See, e.g., State v. Pierce*, 2017-Ohio-5791, ¶ 17 (1st Dist.), citing *Doggett*, 505 U.S. at 658 (holding the prosecution failed to rebut the presumption of prejudice); *Muhammadel*, 2021-Ohio-567, at ¶ 39-41 (1st Dist.) (holding the State's filed discovery responses rebutted the defendant's assertion that he was actually prejudiced).

**{¶28}** First, we cannot presume that Jones was prejudiced by the State's delay in executing the arrest warrants. While we do not condone the State's dilatory performance in this respect, the circumstances surrounding the State's inaction are not egregious. The State had Jones' driver's license, which he testified contained an outdated address. Further, it was disputed whether Jones was even the driver responsible, and, if so, whether his flight from the scene contributed to the delay in service. While the State did not assert that it expended any efforts to execute the arrest warrants, the facts are not so egregious as to create a presumption that Jones was prejudiced.

**{¶29}** Further, Jones has not demonstrated that he was actually prejudiced. Jones argues that the trial court impliedly found that he was prejudiced by adopting a limiting instruction barring Peterson from testifying. However, at the motion-to-dismiss hearing, Peterson explained that she would not be able to testify with certainty unless she had the chance to review her body-worn camera footage, which was no longer available.

**{¶30}** Jones' assertion that he was prejudiced by Peterson's camera footage not being retained is speculative at best. While Jones asserts that the loss of the footage hinders his ability to impeach C.P.'s identification of him, this ignores the fact that Jones was present and available to testify at both the motion-to-dismiss hearing and

the trial itself. At both proceedings, C.P. described the night of the incident in detail. She recalled collecting a wallet after Jones fled on foot, identifying Jones as the driver, and observing Jones return to the vehicle and flee the scene.

**{¶31}** Further, the absence of Peterson's camera footage posed a similar disadvantage to the State. Based upon both Peterson's testimony at the dismissal hearing and C.P.'s trial testimony, the footage likely would have inculpated Jones as the driver. Therefore, while Jones may speculate that Peterson's footage would have afforded him the opportunity to more thoroughly impeach C.P., the same speculative argument could have been made by the State.

**{¶32}** This court recently considered a similar assertion of actual prejudice in *Yoder*, 2025-Ohio-1633 (1st Dist.). While *Yoder* was a case concerning preindictment delay, this court considered the defendant's assertion that the deletion of a responding officer's body-worn camera footage, and the witness statements that were recorded therein, constituted actual prejudice. *Id.* We affirmed the trial court's finding that the defendant was not actually prejudiced by the deletion because "[t]here is no *guarantee* that [a responding officer's body-worn camera footage] would have weakened the State's case whatsoever, rather, only speculation that it might have." (Emphasis in original.) *Id.* at ¶ 20; *see Muhammadel*, 2021-Ohio-567, at ¶ 41 (1st Dist.) (rejecting the argument that the destruction of body-worn camera footage automatically prejudices the defendant); *but see Mughni*, 2022-Ohio-626, at ¶ 9 (1st Dist.) (deferring to the trial court's finding that the deletion of an officer's body-camera footage prejudiced the defense).

**{¶33}** Like in *Yoder*, Jones' actual prejudice argument is entirely speculative. At most, Jones argued that the footage *could* or *may* have helped his case, but because he has not demonstrated that the footage *would* have helped his case, Jones has failed

to show he was actually prejudiced. *See Jones*, 2016-Ohio-5105, at ¶ 28.

**{¶34}** In weighing the *Barker* elements, we conclude that Jones' constitutional right to a speedy trial was not violated. Despite the 11-month delay being sufficiently long, and Jones' timely assertion of the right, the circumstances do not require that we presume that Jones was prejudiced, nor has Jones demonstrated that his defense was actually prejudiced. We therefore overrule Jones' first assignment of error.

### B. Sufficiency and Manifest Weight

**{¶35}** Jones' second assignment of error asserts that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

**{¶36}** In a sufficiency challenge, we consider "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jewell*, 2025-Ohio-2496, ¶ 79 (1st Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶37}** Alternatively, when faced with a manifest-weight challenge, we must assess whether the State satisfied its burden of persuasion. To do so, we assess the "credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [fact finder] clearly lost its way and created a manifest miscarriage of justice." *Jewell* at ¶ 80, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). As a reviewing court, we typically defer to the trial court's credibility findings unless it clearly lost its way. *State v. Jackson*, 2024-Ohio-2728, ¶ 16 (1st Dist.).

#### Failure to Reinstate

**{¶38}** To carry its burden of proof on the offense of failure to reinstate, the State must show that the defendant had a prior driver's license suspension and operated a motor vehicle without reinstating said license. R.C. 4510.21; *see State v.*

*Lewis*, 2019-Ohio-1946, ¶ 14 (11th Dist.) (holding that evidence showing a suspension had lapsed and that defendant had not reinstated their license was sufficient to satisfy the elements).

**{¶39}** In *Lewis*, the Eleventh District considered a similar set of facts as here. There, the defendant argued that they could not be cited for failure to reinstate, because they never had a driver's license. *Id.* at ¶ 4. However, the State put on the arresting officer and introduced the Law Enforcement Automated Data System report generated at the traffic stop. The citing officer testified that during the traffic stop, the report indicated that the defendant had both active and expired suspensions, and that those expired suspensions had the status "failure to reinstate." *Id.* at ¶ 14. The court held the State put forth sufficient evidence to demonstrate that the defendant had failed to reinstate his license. *Id.* at ¶ 17. In support of this proposition, the court cited to an analogous case in *State v. Davis*, 2002-Ohio-6778 (2d Dist.) in which the court held officer testimony explaining the accused's BMV record was sufficient evidence to support a conviction for driving with a suspended license. *Id.* at ¶ 14-16.

**{¶40}** Based on the record before this court, Jones' conviction for the failure-to-reinstate charge was not supported by sufficient evidence. While the State elicited testimony from C.P. that Jones was driving on May 13, 2022, no testimony was put forth demonstrating that Jones had a prior suspended license or that Jones had failed to reinstate said license. Instead, the State submitted a copy of Jones' record from the Ohio Bureau of Motor Vehicles ("BMV") which reflected that, on May 13, 2022, Jones had one active suspension and multiple expired suspensions. The active suspension, a "FRA suspension," ranged from April 2019 to April 2024. Nothing within the BMV record demonstrated that, on May 13, 2022, Jones' license had a prior suspension after which he failed to have his license reinstated. Instead, the record only shows that Jones

had two years to have his license reinstated. Accordingly, even viewing the evidence in a light most favorable to the State, we cannot say that the State put forth sufficient evidence to support the conviction in the absence of testimony explaining the contents of the BMV record. This, in turn, renders Jones' manifest weight challenge moot.

*Failure to Maintain Control*

**{¶41}** R.C. 4511.202 requires the State to demonstrate that the defendant operated a vehicle and did so while not being in reasonable control of said vehicle. *State v. Padgett*, 2021-Ohio-2905, ¶ 11-12 (1st Dist.). The State may prove the defendant's operation of the vehicle via circumstantial evidence. *Id.*, citing *State v. Panzeca*, 2020-Ohio-4448, ¶ 13 (1st Dist.).

**{¶42}** Here, the State put forth sufficient evidence to establish a violation of R.C. 4511.202 and Jones' conviction was not against the manifest weight of the evidence. The State elicited testimony from C.P. that she observed and identified Jones as the driver of a red Mazda that crashed into her car. The State introduced the wallet C.P. retrieved from the scene, as well as photographs of Jones' license and credit cards. While C.P. provided inconsistent testimony on whether Jones exited his vehicle to inspect the damage following the wreck, the court was best positioned to assess her credibility. In weighing C.P.'s testimony and Jones' alibi, the court ultimately found C.P. to be more credible. *See Ohio v. Wilson*, 2022-Ohio-3801, ¶ 11 (1st Dist.) (holding a conviction is not against the weight of the evidence simply because the fact finder believed the prosecution's testimony). Therefore, Jones' challenge concerning the failure to maintain control conviction is overruled.

**{¶43}** Accordingly, Jones' second assignment of error is sustained as it relates to the failure-to-reinstate conviction but overruled with regard to the failure-to-maintain-control conviction.

### *III.    Conclusion*

**{¶44}** Because the trial court did not err in denying Jones' motion to dismiss on speedy trial grounds, we overrule the first assignment of error. The second assignment of error is overruled insofar as it pertains to Jones' conviction for failure to maintain control. The second assignment is sustained as to the failure-to-reinstate conviction for insufficient evidence and Jones is discharged from further prosecution thereon. The trial court's judgment is affirmed in all other respects.

Judgment accordingly.

**NESTOR, J.,** concurs.
**BOCK, P.J.,** concurs separately.

**BOCK, P.J.,** concurring separately.

**{¶45}** I join the majority's opinion, which is a straightforward application of this court's precedent to the facts and comports with Jones's arguments. I write separately, however, to point out that the delay in cases where, as here, the statute of limitations expires before the warrant is executed, calls for an analysis of the statute of limitations.

**{¶46}** On May 13, 2022, the trial court issued a warrant for Jones's arrest for a minor misdemeanor, which carries a six-month statute of limitation. More than 11 months later, police arrested Jones. During those 11 months, law enforcement apparently made no attempt to find, serve, or arrest Jones.

**{¶47}** Consistent with First District precedent dating back to *State v. Sears,* 2005-Ohio-5963 (1st Dist.), Jones argued that the 11-month delay violated his right to a speedy trial under the Sixth Amendment.

**{¶48}** But the Sixth Amendment is not the sole mechanism guarding against an unreasonable delay, which may "interfere with [a defendant's] ability to defend himself." *United States v. Marion*, 404 U.S. 307, 321 (1971). Indeed, "the applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges." *Id.* at 322.

A. *Statutes of limitations encourage timely and efficient investigations*

**{¶49}** Statutes of limitations impose time limits for the State to commence prosecutions after a criminal offense is committed. *State v. Swartz*, 88 Ohio St.3d 131, 132 (2000), quoting *Toussie v. United States*, 397 U.S. 112, 114-115 (1970). These time limits protect defendants from defending against charges where the passage of time may have obscured basic facts and "'minimize the danger of official punishment because of acts in the far-distant past.'" *State v. Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.*, 85 Ohio St.3d 582, 586 (1999), citing *Toussie* at 114-115. Criminal prosecutions, after all, "should be based on reasonably fresh, and therefore more trustworthy evidence." (Citations omitted.) *Climaco* at 586. The overriding intent in enacting statutory time limits is to discourage inefficient or dilatory law enforcement, rather than to provide offenders an avenue to avoid criminal liability. *Id.*

**{¶50}** For a minor misdemeanor offense, the prosecution must "commence[]" within six months of the commission of the offense, or prosecution of the offense is barred. R.C. 2901.13(A)(1)(c). A criminal offense is "committed" when every element of the offense has been completed. R.C. 2901.13(D). The State carries the burden to prove that it commenced the prosecution within the relevant statutory period. *State v. Goller,* 2024-Ohio-5983, ¶ 27 (3d Dist.).

B. *Prosecutions are commenced only if the State exercises reasonable diligence*

**{¶51}** In his speedy-trial argument, Jones stressed the State's inaction in executing the warrant. The State's actions—or inaction—are also relevant to statute-of-limitations' analyses. Relevant here, "[a] prosecution is not commenced upon issuance of a warrant, summons, citation, or other process, unless reasonable diligence is exercised to execute the same." R.C. 2901.13(E). In other words, simply because law enforcement secures an arrest warrant is not enough to commence a prosecution; instead, law enforcement must exercise reasonable diligence in "executing" the warrant. *State v. King*, 103 Ohio App.3d 210, 212 (10th Dist. 1995); *see State v. Berry,* 2021-Ohio-2588, ¶ 34 (8th Dist.). A warrant is "executed" when the offender is arrested. Crim.R. 4(D)(3).

**{¶52}** When a defendant asserting a statute-of-limitations defense shows that the prosecution was commenced beyond the statutory limitations period, the burden shifts to the State to demonstrate that it exercised reasonable diligence to execute the warrant. *State v. Pannell*, 2017-Ohio-4286, ¶ 19 (5th Dist.).

C. *Reasonable diligence depends on the circumstances*

**{¶53}** Reasonable diligence means "'[the] fair, proper and due degree of care and activity, measured with reference to the particular circumstances'" and considering the diligence that a person of ordinary prudence would be expected to use. *In re Thompkins,* 2007-Ohio-5238, ¶ 25, quoting *Sizemore v. Smith*, 6 Ohio St.3d 330, 332 (1983). While courts examine reasonable diligence on a case-by-case basis, law enforcement exercises "reasonable diligence" when efforts are made to execute the warrant or serve the summons "in compliance with Crim.R. 4(D)." *City of Cleveland v. Bermudez,* 2020-Ohio-4296, ¶ 8 (8th Dist.). What constitutes reasonably diligent efforts should reflect advancements in technology that law enforcement may employ

in investigations. *See State v. McGhee,* 2001 Ohio App. LEXIS 2813, *8 (5th Dist. June 20, 2001).

**{¶54}** For instance, in *Pannell,* an officer surveilled one of several addresses connected to the defendant on "about three" separate occasions but did not approach the residence or knock on the door. *Pannell* at ¶ 23. The *Pannell* court held that the detective's efforts fell below the reasonable diligence required by R.C. 2901.13(E) and Crim.R. 4. *Id.*

**{¶55}** And where a defendant's address is "clearly discernible in the documents establishing the basis for the issuance of a warrant, the authorities who fail to employ that information to serve the warrant have failed to exercise reasonable diligence." *State v. Gempel*, 1999 Ohio App. LEXIS 2406, *10 (1st Dist. May 28, 1999). In *State v. Berry,* the court held that two attempts by law enforcement to find a defendant at addresses known to law enforcement fell below reasonable diligence to execute an arrest warrant. *Berry,* 2021-Ohio-2588, at ¶ 43-44 (8th Dist.). Of course, if the State fails to make any effort to locate a suspect, that effort falls well below the required reasonable diligence. *State v. Jackson,* 2006-Ohio-2468, ¶ 10 (8th Dist.).

D. *A suspect's conduct may toll the limitations period*

**{¶56}** Below and on appeal, the State emphasizes Jones's flight to argue that he contributed to the delay. Under R.C. 2901.13(G), the statute of limitations is tolled "when the accused purposely avoids prosecution." The tolling provision prevents suspects who took steps to avoid prosecution from taking advantage of the statutory-limitation period. *See State v. Bess*, 2010-Ohio-3292, ¶ 24. Simply put, a statute-of-limitations defense is unavailable to a defendant "[w]here the defendant himself causes the delay by going into hiding and the government pursues him with reasonable diligence." *Pannell*, 2017-Ohio-4286, ¶ 28 (5th Dist.). The State bears the burden to

prove that the limitations period was tolled. *State v. Gallant*, 2007-Ohio-6714, ¶ 13 (3d Dist.).

**{¶57}** In *Bess*, the defendant, after learning that he was being investigated for sexual abuse, purposely avoided prosecution by fleeing from Ohio to Georgia and living under an alias. *Bess* at ¶ 4-7. The Supreme Court of Ohio held that R.C. 2901.13(G) tolls the statute of limitations for "all offenses committed by an accused during the time when the accused purposely avoids prosecution for any offense, regardless of whether an indictment has been returned or whether underlying criminal activity has been discovered." *Id.* at ¶ 32.

**{¶58}** In contrast, a defendant has not "purposely avoided prosecution" where the defendant has been "living openly" and took no steps "to conceal his whereabouts." *See Berry*, 2021-Ohio-2588, at ¶ 51 (8th Dist.). Moreover, "[t]he fact that [the defendant] never received the summons can be considered as evidence that []he did not purposely avoid prosecution, since []he did not have notice of the pending charges." *Gallant* at ¶ 18. The *Gallant* court held that the State had not met its burden to show that the defendant purposely avoided prosecution in part because after the defendant learned about the pending charges, she called the city law director to resolve the issue, returned to the jurisdiction, and secured employment in the jurisdiction where charges were pending. *Id.* at ¶ 20-21.

**{¶59}** These cases demonstrate that, like reasonable diligence, courts must determine whether a statutory-time limit is tolled on a case-by-case basis.

**{¶60}** I recognize that Jones's arguments and the majority opinion's analysis comport with this court's speedy-trial jurisprudence. But in my view, when the State executes a warrant beyond the statutory-limitation period, issues involving delays

caused by a lack of reasonable diligence are better suited for statute-of-limitations analyses under R.C. 2901.13.